(96 South. 669)

### No. 25529.

### STATE v. BELL et al.

(April 2, 1923. Rehearing Denied April 30, 1923.)

*(Syllabus by Editorial Staff.)*

1. States ⬤⟿109—Evidence held to show failure to comply with specifications by contractor.

In action against contractor employed to put new roof on the state house, evidence *held* to show failure to comply with specifications in numerous particulars, and that this was not due to lack of materials or authorized by custodian.

2. Damages ⬤⟿189—Evidence must be certain.

The damages recoverable for roofing contractor's failure to comply with specifications is the amount of loss sustained, and the evidence thereof must be certain, and not conjectural and speculative.

3. Damages ⬤⟿189—Evidence as to extent of damages from contractor's failure to comply with specifications held not sufficiently certain.

Testimony that it would cost "something in the neighborhood of $4,700," or "something near $5,000," to repair contractor's failure to comply with specifications, *held* not sufficiently certain to support recovery.

4. Judgment ⬤⟿197—Of nonsuit should be granted, when evidence shows breach, but does not sufficiently show damages.

Where evidence, in action against contractor employed to put roof on state house, showed clear violation of the contract, but did not sufficiently establish the damages, the judgment should have been one of nonsuit, and not absolute rejection of plaintiff's demand.

Appeal from Sixth Judicial District Court, Parish of Ouachita; Fred M. Odom, Judge.

Action by the State, against J. G. Bell and another. From a judgment for defendants, plaintiff appeals. Judgment set aside, and judgment rendered dismissing plaintiff's demand as in case of nonsuit.

A. V. Coco, Atty. Gen., and Paul Sompayrac, Asst. Atty. Gen., for the State.

C. W. Easterling, of Monroe, for appellee Bell.

Stubbs, Theus, Grisham & Thompson, of Monroe, for appellee National Surety Co.

ROGERS, J. This is an action by the state of Louisiana, through its Attorney General, under the authority of a resolution of the General Assembly of date June 8, 1920 (page 9), to recover the sum of $1,000, with interest, from J. G. Bell and the National Surety Company, in solido, and the further sum of $5,194, with interest, from J. G. Bell individually.

Plaintiff alleges that on August 21, 1919, defendant Bell entered into a contract with the state of Louisiana by which he obligated himself to do all the mechanical work of new roofing and repair to the state house in accordance with the specifications attached to the contract, within 35 clear working days from the time material for the work was received, for the sum of $1,000, penalizing himself in the sum of $5 for every clear day over the time limit specified in the contract; that Bell executed bond, with the National Surety Company as surety, in an amount equal to the contract price, for the faithful

performance of his obligations thereunder, but that the said Bell, and the said National Surety Company, notwithstanding amicable demand and due placing in default, have failed to perform the obligations imposed upon them, and have actually violated the same.

It is further alleged that the failure of Bell to perform his contract has damaged the state of Louisiana in the principal sum of $4,769, which the said state is entitled to recover, together with an additional sum of $5 for each day since January 1, 1920, to the filing of the petition, with 5 per cent. interest and costs.

In paragraphs V and VI of its petition, plaintiff sets forth in detail the active and passive violations of the contract of which it complains, consisting, in general, of omissions to the Senate roof, the dome roof, the pension office roof and the roof of the House of Representatives, north and wings, and the failure of the contractor to perform the work in a proper and skillful manner, leaving the same in such condition that the roof leaked and the gutters overflowed, so that water from the same during rainfalls ran down and damaged the walls of the state house and of the pension office, and for the repair of which the state has been compelled to expend and must expend a total of $1,500.

Defendant Bell, in his answer, admitted the contract, but denied all of the other allegations of the petition, save the further admission that he did not insert counter flashing, assigning, as a reason for this omission, the failure on the part of the state to furnish the copper therefor, and averring that as a substitute he painted the same, as demanded by the custodian, M. J. Duty.

The surety company admitted its contract of suretyship, but for lack of information denied all of the other allegations of the petition.

The lower court rejected plaintiff's demand, and the state has appealed from the judgment.

The evidence offered on behalf of plaintiff is in the form of depositions given by four witnesses, to wit, D. C. McLaughlin, a general contractor in sheet metal work, and Leo A. Arbour, sheet metal worker and tinsmith, both residents of the city of Baton Rouge, S. T. Darden, former assistant secretary to the Governor, and M. J. Duty, former custodian of the state house.

The only evidence offered on behalf of the defendants is the testimony of the defendant J. G. Bell.

[1] Without reviewing the testimony of plaintiff's witnesses in detail, it is sufficient to say that the testimony clearly shows that Bell did not carry out the contract in accordance with the specifications in numerous particulars, notably in his failure to remove all of the old roof, to drive in or pull out nails, smooth with surface, before applying the roof and troughs, solder all of the valleys, removing all of the broken slate and replacing same with new ones. It is true that Bell, testifying in his own behalf declares that the work was performed according to the specifications, except in a few minor particulars, and that in all cases where the specifications were not followed it was due to the fact that the proper material was not furnished, or because it was impractical to follow them, and that he was permitted by Maj. Duty to deviate from them. This testimony, however, when analyzed, is corroborative, in a measure, of the testimony given by plaintiff's witnesses. The witness, however, seeks to excuse his failure to comply with all of the obligations of his contract, or his deviation from the specifications, to the lack of material which was to be furnished by the state, and to the express permission claimed to have been given to him to depart from the terms of the agreement. This evidence is contradicted by the testimony of M. J. Duty, the former custodian of the state house, who shows that all of the material was promptly furnished; that it was on the ground for at

least 20 days before Bell came on to commence the work, and that when Bell left the work a considerable amount of material remained on hand. Besides, it is established that the contractor never complained to the state authorities of any deficiency of material. It is not shown by the testimony of the witness that he permitted any deviation from the specifications, and it clearly appears that he did complain by means of several letters addressed to Bell of the leaks in the roof, and the consequent damage resulting therefrom, to none of which he received a reply, except to the one written on January 9, 1920, and sent under registered cover, which was answered by the addressee, under date of January 11, 1920, in which reply Bell expressed sorrow to learn of the leaks, excuses his failure to give the matter his immediate attention, because of illness and the absence of his workmen, and closes with the assurance that he will do his best to come down as soon as he can to "fix it up." Mr. Darden, assistant secretary to the Governor, also wrote to the contractor, calling his attention to his failure to comply with his contract. These letters were not answered. Bell did not go to Baton Rouge in order to ascertain wherein the work was deficient or to "fix it up," and he in fact, never gave the matter any further attention, and never even inspected the work until the Wednesday prior to the date (March 27, 1922) on which the case came on for trial in the lower court.

While the record shows the failure of the contractor to comply with his contractual obligation, it does not establish positively and definitely the amount of damage the state has suffered thereby. Plaintiff attempts to fix the quantum of damage by the testimony of two witnesses—Mr. McLaughlin and Maj. Duty. On this point, Mr. McLaughlin says that as manager for M. J. Williams he was called upon, some time after Bell had left the job, to examine the roof and make an esti-mate of the work necessary to be done thereon. His estimate was based upon plans and specifications which he made at the time in which it was contemplated to remove the old roof entirely and put on a new one, and which called for an expenditure of "something in the neighborhood of $4,700." Maj. Duty, whose original trade was that of machinist, and not that of metal or roofing worker, computed the damage at "something near $5,000." No proof whatever is submitted showing the extent to which the building was damaged by leaks.

[2, 3] It is argued on behalf of plaintiff that, inasmuch as the words "about" and "nearly" allow a play within narrow limits, and that as the very nature of the damage suffered by the state does not permit of evidence to fix the amount with mathematical precision, the testimony of Messrs. McLaughlin and Duty affords a sufficient basis for a judgment in its favor of not less than $4,-700. We are unable to subscribe to this argument. It is true there is a class of cases in which the court may and must exercise its discretion in allowing damages, but these are cases where all the facts and circumstances surrounding the injury are before the court, as in cases of personal injuries or injury suffered by the invasion of a legal right, or where the damages flow from mental suffering. In a case involving a plain breach of contract, however, which is the issue presented here, the damage due to the creditor for the breach is the amount of the loss he has sustained, and the judgment must rest on the basis of certainty, and not on mere conjecture and speculation. The court is unable to determine what was in the mind of Mr. McLaughlin when he testified that the cost of the repairs would be "in the neighborhood of $4,700," whether it would be a few hundred dollars more, or a few hundred dollars less; nor is it clear just what Maj. Duty meant when he testified that the figure would

be "something near $5,000." This testimony would involve the court in a pure matter of guesswork in any attempt it might make to fix the amount of the damages sustained by the plaintiff.

[4] In these views we are in accord with the opinion of the judge of the lower court, but we believe that under the circumstances of this case, showing a clear violation of the terms of the contract, the plaintiff ought to have another opportunity to establish, if it can, the exact amount of its loss occasioned by said violation, and that the judgment should have been one of nonsuit, and not an absolute rejection of plaintiff's demand.

For the reasons assigned, it is therefore ordered, adjudged, and decreed that the judgment appealed from be set aside, and that there now be judgment in favor of defendants and against plaintiff, dismissing plaintiff's demand as in case of nonsuit; costs of this appeal to be paid by the defendants.