**Mary PEYTON and Albertha Moore, Plaintiffs and Appellants, v. MORGAN'S LOUISIANA & TEXAS R. R. & S. S. CO. et al., Defendants and Appellees.**
**No. 14504.**

Court of Appeal of Louisiana. Orleans.
June 12, 1933.

Charles J. Mundy, of New Orleans, for appellants.

Spencer, Gidiere, Phelps & Dunbar, of New Orleans, for appellee Insurance Co.

Denegre, Leovy & Chaffe and Lloyd A. Ray, all of New Orleans, for appellee Railroad Co.

JANVIER, Judge.

This matter comes before us on appeal from a judgment dismissing on exception of no cause of action the suit of plaintiffs against the Morgan's Louisiana & Texas Railroad & Steamship Company. When the suit was filed below, there were two defendants, the other being Metropolitan Life Insurance

Company. After the dismissal of the suit as to the railroad company, the matter proceeded to trial and evidence was taken in the claim of plaintiffs against Metropolitan Life Insurance Company et al.

Judgment was rendered in that matter in favor of defendant insurance company, and plaintiffs appealed.

They had previously appealed from the judgment dismissing on exception of no cause of action their suit against the railroad company and in this court the two cases were consolidated for the purpose of argument.

In the decision rendered by us today in the suit against the life insurance company we discussed the entire matter with reference to both defendants and, therefore, now only make reference to the other opinion.

For the reasons given, therefore, in Mary Peyton and Albertha Moore v. Metropolitan Life Insurance Co. et al., 148 So. 721, decided by us today, the judgment in favor of Morgan's Louisiana & Texas Railroad & Steamship Company, is affirmed.

Affirmed.

---

**DUNNINGTON v. SABLE. ***
**No. 14314.**

Court of Appeal of Louisiana. Orleans.
June 12, 1933.

---

St. Clair Adams and St. Clair Adams, Jr., both of New Orleans, for appellant.

Columbus Reid, of Hammond, for appellee.

HIGGINS, Judge. ·

Plaintiff alleges that on January 11, 1931, at about 8:30 a. m., he was driving his Chevrolet 1½-ton truck on State Highway No. 51 in the parish of St. John the Baptist from Hammond toward New Orleans; that the truck was being driven on its extreme right side of the road; that the defendant was driving a Chevrolet coupé in the opposite direction and, when the vehicles approached each other, defendant deliberately drove from his right side of the road to the left, striking the truck and causing it to turn over, resulting in damages thereto amounting to $525 and a total loss of 300 gallons of milk valued at $120.

Defendant answered admitting that there was an accident, but denied that it occurred in the manner alleged by petitioner, and in reconvention sought to recover the cost of repairing his automobile, damages for personal injuries, and medical expenses, alleging that, as the vehicles approached each other about three miles above the town of La Place, there was an automobile in front of defendant's car and one in the rear of it; that the car in the rear was driven around the defendant's car, and, as it proceeded to pass the car in front of defendant's.automobile, the plaintiff's truck approached from the opposite direction at a speed of about 50 miles an hour; that due to the presence in the middle of the road of the car that was passing the car in front of the plaintiff's automobile, the driver of the truck pulled to his extreme right side of the road; that the right front and rear wheels went upon the wet and soft shoulder of the road, causing it to skid, so that the driver lost control of it, resulting in the truck coming diagonally across the road and striking the defendant's car on its left front side while on its right side of the road.

There was judgment in favor of the plaintiff, as prayed for, and dismissing the reconventional demand. Defendant has appealed.

The plaintiff and Charles Harper, who was riding with him at the time of the accident, testified that they were proceeding toward New Orleans at a speed of about 40 miles an hour; that due to the fact that the defendant attempted to drive around another car, which was in front of his car, the plaintiff, in order to avoid a collision, had to drive the truck to its extreme right side of the road, so that the front and rear right wheels were upon the shoulder of the road, which was soft because of recent rainfall; that while the truck was in that position the defendant drove his car diagonally across the road, so that the middle of the front bumper struck the left front fender and wheel of the truck, causing it to turn over on its right side on the shoulder of the road; that defendant's car came to rest in the center of the highway; that the truck was completely demolished and that the milk was spilled.

The testimony of these two witnesses is corroborated by that of W. C. Torrence, Louisiana state highway traffic officer, who came upon the scene about an hour after the accident occurred. He found the truck turned over on its right side on the right shoulder of the road, with the milk cans strewn over the black top part of the roadway, as well as the shoulder of the road; that the road is about 30 feet in width considering the shoulders, which are about 5 feet in width on each side; that there was plainly visible in the right shoulder of the road the imprint of the truck tires for a distance of about 75 feet, from the part where the wheels left the hard surface to practically the place where the truck overturned; that the Chevrolet coupé was about in the center of the road on an angle pointing in the direction of the truck.

The defendant and his wife testified that they were driving about 30 miles an hour in the direction of Hammond and, upon receiving a signal from an automobile approaching in the rear, the Chevrolet coupé was driven to its right side of the road; that the approaching car then passed it and was in the act of passing another automobile about 65 feet in front of the defendant's car, when the plaintiff's truck approached at a terrific rate of speed; that the front and rear right wheels of the truck came in contact with the soft shoulder of the road, causing the driver of it to lose control·of the truck, so that when it was just opposite the defendant's car, it swerved from its right side to its left side of the road and struck the defendant's car, causing the truck to turn over and disabling the defendant's car, as well as causing serious injury to his wife.

Plaintiff's counsel argues that the great preponderance of the evidence shows that the proximate cause of the accident was the willful act of the defendant in driving on the wrong side of the road at a reckless rate of speed, while plaintiff's truck was approaching in plain view.

Defendant contends that the accident was caused through the negligence or carelessness of plaintiff in driving the heavily laden truck at an unlawful rate of speed on a wet road, which caused him to lose control of it, citing section 8, title 2, of Act No. 296 of 1928, which limits the speed of 1½-ton trucks to 20 miles per hour.

The issue presented is purely one of fact; that is, whether or not the plaintiff drove the truck from his right side of the road to the left side and struck the defendant's car, or whether or not the defendant was guilty of such an act. The speed of either car would be relevant only to show that it was on account of the excessive rate of speed of the car that it was steered from its right side of the road to the left side and came in collision with the other vehicle, because driving on the wrong side of the road by one of the parties was undoubtedly the proximate cause of the accident.

The trial judge reached the conclusion from the testimony of the witnesses and the physical facts that the defendant's car ran from its right side to the left side of the road and struck the truck while it was traveling with the right front and rear wheels on the shoulder of the road. The case in its last analysis presents a question as to the proper weight to be given to the testimony of the respective witnesses, and, while it appears to us that the issue is a close one, we find nothing in the record which would justify us in reaching a conclusion different from that of our brother below on the question of liability.

■ The plaintiff's proof of the alleged damages is most meager and vague both as to the damages to the truck and the quantity and value of the milk that was lost. It appears that he had paid $814 for the Chevrolet truck and had driven it 29,000 miles in about a year's time. Plaintiff testified that he would not take $550 for it and that he had a Mr. White, the Chevrolet dealer at Hammond, make an estimate for repairing the damages, which amounted to $525.45; but Mr. White did not testify and the estimate was not introduced in evidence. Under the circumstances we do not feel that plaintiff has sufficiently shown the extent of the damages and how much it would cost to repair the truck.

Plaintiff also testified that Mr. Watkins and himself were responsible to various farmers for the milk which they undertook to deliver in New Orleans; that there were about 300 gallons of it in the truck in 10-gallon cans, when it turned over. There is no evidence of the value of the milk, or of plaintiff's inability to salvage any of it. We have decided, therefore, to remand the case for the purpose of giving the plaintiff an opportunity to prove, by competent evidence, the extent of the damages to the truck and the cost of repairing it, the amount of milk that was lost, and the value thereof. State v. Bell et al., 153 La. 827, 96 So. 669.

For the reasons assigned the judgment appealed from is reversed, and it is now ordered that this case be remanded to the civil district court for the parish of Orleans for further proceedings consistent with law and the views herein expressed.

Reversed and remanded.