PROYOSTT, J.
This suit is for damages in behalf of the minor son of the plaintiffs for injuries sustained by him while working for the defendant company at its planing mill. The young man was about 18 years of age and full grown. He was assigned to keeping the floor of the mill free from shavings and debris that fell from the planer machines. While he was at this work, near one of the machines, a belt, which moved horizontally about three feet above the floor, broke and struck him, and inflicted the injuries complained of. It parted where the two ends had been laced together. It is charged that the belt was negligently defective in several respects.
In one of these respects the charge has been sustained, we think. The belt consisted of two thicknesses of leather, glued together so as to have the appearance of one thickness. The evidence is all to the effect that the ungluing, or separation, of the two thicknesses, or, to use the expression of the witnesses, the “splitting” of a belt, is an element of weakness. Now, the belt, as exhibited in this court, shows a split at one end— that is to say, at the very place where the break occurred; and the assistant foreman, who had laced the ends together, testifies that this split was there when he did the work. The belt, then, was being used with a defect in it; and this defect was known to the defendant, since the knowledge of the assistant foreman must be held to have been that of the defendant.
The split had been repaired, but only with rivets; and the event shows that it had not been safely repaired. The safe way to have repaired it would have been by regluing. Rivets may be used for preventing a split from spreading, but not to restore to the belt the strength which it has from the two thicknesses being homogeneously joined by gluing. The mode of repairing by gluing is admittedly the safer, and ordinary prudence should have dictated its use for a split at the end of the belt, where the leather is further weakened by the holes through which the laces are to be passed.
Testimony was offered to prove that the split which is seen at the end of the belt might have been caused by the rough usage the belt underwent during the accident; and it is argued that the assistant foreman, who repaired the belt and who testifies that the end was already split at the time, is an uncle *287 of the injured young man and is a biased witness, and that, moreover, he ought not to be believed when, for the purpose of aiding the case of his nephew, he thus adduces his own fault.
We see no reason for not believing the witness, especially that his statement is corroborated by the presence of the rivet holes one inch and a half from the end of the belt, which shows that the split must have extended near to, if not quite to, the end.
We conclude that the belt had been unsafely repaired, and that the defendant company is responsible, under the rule requiring employers to furnish safe appliances. Broadfoot v. Cotton Oil Company, 111 La. 468, 35 South. 643.
The argument that the workman assumes the risk incident to his work has no place in this case, since the injury was caused by the defect in question, of which it is not pretended that the young man knew anything.
A strenuous effort .is made to reduce the amount allowed by the jury, which is $6,000. The young man was knocked senseless, and did not regain knowledge of his surroundings until the next day. So sudden and violent was the blow that he did not know what had struck him. A long gash was torn in his scalp, and a hole large enough to admit the physician’s little finger was knocked through his skull at the back of his head, and in front of the skull “the flesh was all torn off and there was some depression of the bone.” The right eye was knocked out. The young man was confined to his bed for 21 days, and suffered greatly. At the date of the trial, 18 months later, he was still incapable of manual labor, such as working on his father’s farm and could not, without dizziness apply himself to study. 1-Ie is a mere unskilled laborer. The eye is permanently gone, and the effect of the hole in the skull will be more or less permanent. We are disinclined to interfere with the allowance of juries, unless clearly excessive or inadequate. In this case we cannot say that the amount is clearly too large.
Judgment affirmed.