OYERTON, J.
 

 Plaintiffs are the members composing the Central Tire & Service Company, a commercial partnership doing business in the city of Monroe. The firm of which they are members is engaged in the storing and repairing of automobiles; the selling of gasoline, lubricating oil, and all automobile accessories. For the purpose of conducting the business of their firm, plaintiffs leased from defendant a brick building, in Monroe, for a period of 5 years and 18 days, known as the Meyer Bros. Warehouse, and also certain ground contiguous to said warehouse. In leasing the premises, plaintiffs intended
 
 *781
 
 to tear down the front wall of the warehouse, erect a new front to the building, and make such repairs and additions as in their judgment were necessary to make the warehouse suitable for the purposes of the business of their firm. Defendants knew of those intentions, and a provision was inserted in the lease authorizing plaintiffs to make repairs and additions to the building.
 

 On the day that the lease was signed, plaintiffs let a contract, with the end in view of making such changes in the building as would adapt it to the business of their firm. A permit was obtained from the city to remodel the building, the remodeling to cost $3,500. The front wall was torn down, and, before the work of remodeling had gone much further, the city condemned the building as unsafe, and ordered defendant to remove it. Defendant complied with this order. Hence plaintiffs were deprived of the building which they had leased to conduct the business of their firm. They therefore made demand on defendant to reconstruct the building and thereby comply with its contract to furnish them with a building during the term of the lease, but defendant refused to comply with this request. Plaintiffs therefore leased a building in another location, in the city, in which to conduct the business of their firm. After leasing another building, they instituted the present suit to dissolve the lease, entered into with defendant, and to recover judgment against defendant for damages in the sum of $16,344.70.
 

 The damages sued for consist of the following items, to Wit, the expenses incurred by plaintiffs in attempting to remodel the building so as to make it adaptable to the purposes of the lease; attorneys’ fees for preparing the lease, and the costs of recording it; attorneys’ fees for bringing this suit; compensation for anxiety, worry, and loss of time; the expense that plaintiffs will be put to in repairing the building selected by them, when defendant refused to rebuild; and additional profits which plaintiffs, as the members composing their firm, would have made between the date of the lease and the institution of this suit, and also between the latter date and the termination of the lease, by reason of the favorable location of the property rented, had defendant complied with its contract.
 

 Plaintiffs’ cause of action is based primarily upon allegations showing that, when defendant entered into said contract of lease, it did so, knowing that the walls of the building it was leasing were in a weakened and defective condition, and that they (plaintiffs) were ignoraht of that condition, and let the contract for the remodeling of the building in utter ignorance of its defective condition, and upon the ground that defendant should have, rebuilt the building for their use, under the lease, after it was condemned and ordered demolished.
 

 ■ Defendant first filed a motion to strike from plaintiffs’ petition the demand for damages for lost profits, amounting to $12,180, on the ground that the profits sued for are purely prospective and speculative and not susceptible of proof. The court sustained the motion, and ordered that item stricken from the demand. Defendant also moved to strike from plaintiffs’ petition the demand for damages, consisting of the attorneys’ fees for the preparation of the lease, and the cost of recording the same; the attorneys’ fees for bringing this suit; the amount claimed for anxiety, trouble, and loss of time; and the expense, amounting to $2,000, that plaintiffs alleged they will be put to in repairing the building they leased, when defendant refused to rebuild. The ground alleged for striking these items from the petition is that they are not recoverable. As appears from the opinion of the court, these items were ordered stricken from the petition.
 

 After these preliminary motions had been filed and heard, defendant answered. In its answer, it admits the execution of the lease
 
 *783
 
 and the subsequent demolition of the building under municipal orders, but denies that the condemnation of the structure was due to any defects in it at the time it was leased, or that it, defendant, was then aware that the walls of the building were in a weak or defective condition. It then avers that the weakened condition of the building, which provoked its condemnation, was brought about solely by the improper method adopted by plaintiffs’ contractor, in this, that said contractor, in taking down the front wall oi the building, failed to use the proper precaution's, and, as a result, the side walls thereof warped in such a manner as to force the condemnation of the building.
 

 Defendant also reconvened for damages, but the reconvention al demand is not discussed in its brief, possesses no merit, and need not be mentioned further.’
 

 The case was tried on its merits. The trial resulted in a judgment for plaintiffs dissolving the lease and allowing plaintiffs, as damages, the following expenses paid by them, in attempting to repair the building that was later condemned, to wit: $175.65 for labor; $12.50 for hauling; $6.50 for hauling tools; $500 to the contractor; $5 for building permit; and $35 for plumbing, making a total of $734.65. The court rejected an item of $9.30, sued for, consisting of nails, oil, and lights purchased, and another item amounting to $300, consisting of eye beams purchased, for the reason that these items were used elsewhere, and their purchase, therefore, caused no loss to plaintiffs. The court rejected as not proven the following items, to wit: Hauling" dirt and gravel, $105.25; loss on cement, brick, and lime, $75; and hauling t.rash, $16. The remaining items of damages sued for, as stated above, were ordered stricken from the petition.
 

 Defendant has appealed from the judgment rendered, and plaintiffs have filed an answer to the appeal prajdng that they be allowed all of the damages for which they sued.
 

 Defendant does not’ state specifically in its answer wherein the contractor, 'employed by plaintiffs, was negligent in removing the front wall of the building, but it developed during the examination of witnesses that this alleged negligence consists in not properly bracing the side walls of the building, thereby causing those walls to lean over and warp, and necessitating the condemnation of the building.
 

 We have examined the evidence carefully to ascertain whether or not the contractor properly braced the side walls of the building before removing the front wall. The evidence is conflicting in this respect, but our examination of it satisfies us, as it did the trial judge, that the contractor was not negligent in this respect. It was not a lack of proper bracing that, in reality, caused the condemnation of the building, but the condition in which the building was when the lease was made and before the contractor undertook his work. The building was an old one. Many of the brick in the side walls were in a decayed condition. There were cracks in the walls; and, upon the whole, the walls were so weakened by age and decay that it would have been unsafe to have permitted the remodeling to be done and the building to stand. Several years before the trial of this ease defendant, knowing then of the weakened condition of the walls, had them repaired and strengthened. After the repairs were made, the building was then only reasonably safe, but its condition, in our view, even then, was not such as to permit the building to withstand the ravages of time much longer.
 

 Plaintiffs knew, when they leased the property, that the building was an old one, but they did not know of its true condi! ion, as is evidenced, we think, by the fact that they leased the property for so long a time, and by the further fact that, upon the signing of the lease, they entered into a contract for an amount, not inconsiderable, to remodel and repair the building. The trial judge
 
 *785
 
 thought, and not without reason, that defendant knew the condition of the building, and we are inclined to the view that he was correct, at least, as relates to the weakened condition of its walls. But, be that as it may, article 2695 of the Civil Code provides that—
 

 “The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same.”
 

 In the ease at bar it appears, at least, that defendant let to plaintiffs a building, knowing that it was being leased to be used as a garage and place for the sale of automobile accessories, and that it could not be so used to advantage without being ¿ltered and repaired, and gave its consent to the alterations and repairs, when, as a matter of fact, the building could not be altered, because of the unsafe condition of its walls. Under these circumstances we think that plaintiffs are entitled, not only to a dissolution of the lease, but also to such damages as they may have suffered which proximately flow from defendant’s act.
 

 Entertaining the foregoing view, wé are of the opinion that the trial judge correctly allowed plaintiffs the following items incurred by the contractor, and paid by plaintiffs, in connection with the repair and alteration of the building, to wit: $175.65 for labor, the two items of $12.50 and $6.50 for hauling, $35 for plumbing, and , $5 for building permit, making a total of $234.65 correctly allowed by the trial judge. The evidence clearly establishes the correctness of the foregoing items. We are also of .the opinion that the trial judge was correct in rejecting the items of $9.30 for nails, oil and lights, and $300 for eye beams purchased, for the reason that the evidence discloses, and in fact plaintiffs concede, that these articles were used elsewhere, and their purchase therefore caused no loss to plaintiffs. We are also of the opinion that the trial court was correct in not allowing the following items, to wit: For hauling dirt and gravel, $105.25 ; for loss on cement, brick, and lime, $75; for hauling trash, $16. However, we think that the trial court was in error in rejecting these items absolutely, for the reason that plaintiffs have suffered apparently some loss as relates to them, which they should be permitted to recover on proper proof made, the difficulty in allowing the items being that the evidence does not show with legal certainty the amount of this loss, which is justly chargeable to defendant, or, in other words, it does not show that these items, which plaintiffs paid, were in reality due, plaintiff having paid them merely upon the supposition that they were correct as to amounts, and having offered no further evidence in support of them. Hence the decree rendered will have to be amended so as to permit plaintiffs to establish the correctness of these items. As relates to the item of $500 for contractor’s profits, we think that the trial judge erred in allowing it. This item represents the profits that the contractor estimated that he would have made on the entire contract, had the building, which he undertook to repair and remodel, not been condemned by the city. Plaintiffs paid the contractor this amount after the building, pursuant to municipal orders, had been demolished. In our opinion, plaintiffs did not owe the contractor these contemplated profits. Plaintiffs did not breach their contract with him. It was through no fault of theirs that the contract could not be completed. Plaintiffs did not warrant that the building could be repaired or remodeled. Hence, the only loss that plaintiffs sustained in this connection was in paying the contractor an amount which they
 
 *787
 
 did not owe. While it does not necessarily follow, if plaintiffs had owed the contractor the amount which they paid him, 'that they could have recovered the amount so paid from defendant, yet it does follow that, after having paid the contractor an amount which they did not owe, they should not be ’permitted to recover the amount so paid from defendant.
 

 The remaining items to be considered are those which the trial court ordered stricken from the petition. In our opinion, the court did not err in ordering the item of attorneys’ fees for bringing the suit stricken from the petition, and this is so, because our law does not look with favor upon the allowance of attorneys’ fees as an item of damages for the bringing of a suit for damages for the breach of a contract or for injury done. Day v. New Orleans Pac. Ry. Co., 35 La. Ann. 694; Eatman v. New Orleans Pac. Ry. Co., 35 La. Ann. 1018; Fox & Co. v. Jones, 3 So. 95, 39 La. Ann. 929; Bentley v. Fischer Lumber & Mfg. Co., 25 So. 262, 51 La. Ann. 451. Nor do we think that the court erred in ordering stricken from the petition the amount which plaintiffs allege they will have to expend for repairs on the building which they claim they had to lease after the one leased by them from defendant was condemned. It is sufficient in this connection to observe that the amount that plaintiffs allege they will have to spend on the building leased by them, after defendant’s building was condemned, is much less than the amount which it appears from their petition they would have had to expend on defendant’s building had it not been condemned. Hence, if for no other reason, defendant should not be required to pay for these repairs, since plaintiffs will be put to no additional outlay on account of them, and, therefore, will suffer, in reality, no loss by reason of having to make them. We, however, think that the trial court erred in striking from the petition the item of $24.50~for attorneys’ fees, expended in preparing the lease entered into with defendant, and for the cost of recording the lease. The attorneys’ fees so expended were not those for the bringing of a suit, but were an expense incurred in preparing the lease. This expense, together with the cost of recording the lease, was a total loss to plaintiffs, occasioned by the act of defendant in leasing them a building which was unfit for the purposes for which it was leased. Plaintiffs should have been permitted to establish this loss. Hence the judgment will have to be amended so as to protect plaintiffs’ rights in this respect. We are also of the opinion that the court erred in striking from the petition the item of damages, amounting to $500, for anxiety, worry, and loss of time. These damages, if suffered, flow directly from defendant’s having leased to plaintiffs a building that was unfit for the purposes for which it was leased; and, including these for anxiety and worry, are recoverable under our law, when proven. Plaintiffs should have been given an opportunity to prove them.
 

 The last items of damages to be considered are those for the loss of additional profits, which plaintiffs allege they will suffer by reason of having been deprived of the favorable location for their business, selected by them, in leasing the property in question from defendant, and of having been deprived of the extra floor space that the building leased would have afforded them, these deprivations resulting from the condemnation of said building, and the failure of defendant to replace it. The profits here sued for aggregate $12,180.
 

 Granting for the purposes of this ease that defendant was under obligations to replace the building, still we are of the opinion that the trial court did not err in striking from the petition the profits constituting these items. It is true that lost profits may be recovered as an element of damages for the breach of a contract, where, among cer
 
 *789
 
 tain other restrictions on the right of recovery, they are susceptible of proof with reasonable certainty. Chamberlain v. Norwood, 86 So. 920, 148 La. 378; Civil Code, art. 1934; 17 Corpus Juris, verbo “Damages,” § 112, p. 785. On the other hand, if the profits are contingent or uncertain, and, hence, not susceptible of proof with reasonable certainty, they are not recoverable. Doriocourt v. Lacroix, 29 La. Ann. 286; Bergen v. New Orleans, 35 La. Ann. 523; Schleider v. Dielman, 10 So. 934, 44 La. Ann. 462; Reading, Peck & Co. v. Donovan, 6 La. Ann. 491. In the case at bar it is manifest from the allegations of the petition that the profits sued for, as an element of damages, are contingent and uncertain, and not susceptible of proof with reasonable certainty. They are the additional profits which plaintiffs allege they would have made at the new location. The building leased by plaintiffs from defendants had never been used as a garage or place for the sale of gasoline and automobile accessories. It was an old warehouse though prominently located. Whether plaintiffs would have succeeded better at the new stand than at the old, or the one which they later selected, and, if so, to what extent, are purely matters of conjecture. It is clear to us, therefore, that the profits sued for in this instance are too uncertain and conjectural to be susceptible of proof with reasonable certainty. Hence we find no error in the ruling of the trial court in striking them from the petition.
 

 Por the reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from be amended by disallowing said item of $500, consisting of profits paid the contractor; that said judgment be further amended by reinstating said items of $24.50 for preparing and recording said lease, and of $500 for anxiety, worry, and loss of time; that said judgment be further amended by reinstating said items consisting of $105.25 for hauling dirt and gravel,' of $75 for loss on cement, brick and lime, and $16 for hauling trash, which items were rejected by the trial court; that, with respect to said five items ordered reinstated, this case be remanded for the purpose of hearing evidence, or further evidence thereon, as the case may be, and for the rendition of such judgment thereon as the evidence offered will justify; and it is further ordered that in all other respects the said judgment be affirmed, plaintiffs and defendant to pay the costs of appeal in equal proportions.