**185 So. 287**

## FERGUSON v. BRITT.

No. 33904.

Oct. 31, 1938.

Rehearing Denied Dec. 9, 1938.

McCoy, King & Jones, of Lake Charles, for appellant.

John T. Hood, Jr., of Jennings, for appellee.

FOURNET, Justice.

This is a suit to recover damages for the breach of an oil, gas, and mineral lease executed by the defendant in favor of plaintiff. Prior to the recordation thereof defendant executed, in bad faith, another oil and gas lease to a third party affecting the same property, which was immediately recorded, as a result of which plaintiff claims to have been damaged in the sum of $8,661 and deprived of an overriding royalty on the property in question.

The defenses are that there was no bad faith on the part of the defendant and that no damages were actually suffered by the plaintiff. The defendant also set up the special defense in his answer that the lease contract executed by him in favor of the plaintiff had, by agreement, been cancelled. This defense has been abandoned by his counsel.

The case was tried on these issues and there was judgment for the plaintiff in the sum of $1,100. The plaintiff has appealed and the defendant answered the appeal praying (a) that the amount of the damages allowed plaintiff in the judgment be reduced to a nominal sum; or (b) in the event that this court will not reduce the damages to a nominal sum, that plaintiff is only entitled to recover the sum of $300, with interest and costs.

A review of the record reveals that at about ten o'clock on the morning of May 16, 1935, the defendant, Clarence E. Britt, executed an oil, gas, and mineral lease on the Northwest Quarter of Section 15, Township 11 South, Range 3 West, Louisiana Meridian, in favor of plaintiff, John B. Ferguson, Jr., who was represented by his agent, Samuel French, for and in consideration of the price of $500; that subsequently defendant, on the night of the same day, after having ascertained at the clerk of court's office that the lease previously executed by him in favor of plaintiff had not yet been recorded, executed another oil, gas, and mineral lease, which was immediately recorded in the conveyance records of Jefferson Davis Parish affecting the same property in favor

of Clarence A. Storer, for the consideration of $800 in cash. The record further shows that plaintiff recorded his lease the next morning, May 17, 1935; and on the 21st day of May, 1935 filed this suit against the defendant. The case was tried on the 19th of June, 1935.

■ Without narrating in detail the testimony of the several witnesses, it suffices to state, as found by the trial judge, that the defendant was clearly in legal bad faith and consequently was liable to the plaintiff for all resulting damages "* * * as are the immediate and direct consequence of the breach of that contract * * *." Article 1934, Revised Civil Code, par. 2; Beck v. Fleitas, 37 La. Ann. 492.

■ The rule for the measure of damages in such cases is "* * * the loss the plaintiff has sustained and the profit of which he has been deprived." Rosenberg v. Derbes et al., 165 La. 407, 115 So. 637, 638. See, also, E. B. Williams & Co. v. Bienvenue et al., 109 La. 1023, 34 So. 63; Gauthier v. Green, 14 La.Ann. 788; Smith v. Thielen, 17 La.Ann: 239; New Iberia Sugar Co. v. Lagarde, 130 La. 387, 58 So. 16; Tidewell et al. v. Meyer Bros., Ltd., 160 La. 778, 107 So. 571.

In the instant case the plaintiff suffered no loss, as it was shown on the trial of the case that the defendant was paid by draft which was never cashed. In fact, on the trial of the case, the defendant offered to return the same to him. It is plaintiff's contention, however, that he is entitled to recover the highest price that might have been obtained for the lease from the date it was executed to the date of the trial and accordingly . offers the testimony of two dealers in oil leases, Messrs. C. O. Noble of Lake Charles and Ash Robertson of Houston, who stated that they would have paid for an assignment of the lease $100 and $150 respectively per acre, and in addition thereto would have given a ½4 overriding royalty interest. But a review of their testimony reveals that neither would have purchased the lease without an examination of the title by an attorney of their choice and his recommendation that the same was good and merchantable. This circumstance, when considered with the facts, as shown by the record, that the lease executed by the defendant in favor of the plaintiff was as owner of the tract of land in its entirety, without reservation, although there was outstanding of record a deed by which defendant had transferred to the liquidating trustees of the Calcasieu National Bank and the Southwest Louisiana Farm Mortgage Company an undivided one-half interest in and to the mineral rights or servitude and also past due mortgages aggregating more than $200 per acre affecting said land.

■■ Plaintiff, therefore, has failed to prove his claim for the profits that he would have received for the lease in controversy with reasonable certainty. We can only rest our judgment "* * * on the basis of certainty, and not on mere conjecture and speculation." State v. Bell, 153 La. 823, 96 So. 669, 671. See, also, Starnes v. Pine Woods Lumber Co., 122 La. 284, 47 So. 607; Jefferson Sawmill

Co., Ltd. v. Iowa & Louisiana Land Co., Ltd., 122 La. 983, 48 So. 428, Henry Byrnes & Co. v. Concrete Construction and Contracting Co., 137 La. 869, 69 So. 493; Tidewell et al. v. Meyer Bros., Ltd., 160 La. 778, 107 So. 571.

In oral argument and in brief, counsel for the plaintiff pointed to the fact that the " * * * testimony and leases in the record show that the property in and near the Britt property leased for anywhere from $5.00 to $70.00 per acre for the time and shortly after the time of the Ferguson Storer leases," and argued that " * * * the court can see from the actual amount which was paid by the Stanolind Oil & Gas Company for one-half interest on the Britt tract was $5,-600.00, and therefore the testimony of Mr. Ash Robinson [Robertson] and Mr. C. O. Noble is borne out because if they could have gotten a lease on the one-half interest in the Britt tract, it is easy to see that the Stanolind Oil & Gas Company would have given not only $100.00 per acre, but probably several hundred dollars per acre in order to keep some third person from having a lease on the same and thereby interfere greatly with their operations and control of the situation, which proves that the testimony of Noble and Robinson [Robertson] is correct and that the value of a lease on this particular tract of land was at least $100.00 per acre and that ½4th overriding royalty would have been given if they could have obtained the lease." (Brackets ours.)

There is a great deal of merit to counsel's argument. It is reasonable to assume

that plaintiff, if he had held a valid lease on defendant's property, particularly since the property leased happened to have been located in the center of the block of property leased by the Stanolind Oil and Gas Company, would have had it (the Stanolind Oil and Gas Company) at a serious disadvantage and could have commanded a very fine price for a transfer of his rights. Nevertheless he has failed to prove with that reasonable degree of certainty the law requires that the profit he would have made if the lease in favor of Storer had not been recorded prior to the recordation of his lease, as there is nothing in the evidence to show that he was willing to sell or had an offer to buy the lease at any definite or fixed time for any definite or fixed price, other than as shown by the testimony of Messrs. Noble and Robertson, both of whom were very indefinite as to whether or not they would have paid the price they said the lease was worth, due to the condition of the defendant's title to the property.

In the instant case the trial judge gave judgment in favor of the plaintiff in the sum of $1,100, based on the fact that the defendant received for the execution of the lease in favor of Storer the sum of $800 in cash and an additional payment of $800 to his mortgage creditors, subject to the sum of $500, the consideration recited in the lease.

It is contended, however, by defendant, that the amount paid on the mortgages outstanding against his property was not in fact a payment on the lease, but was made by the lessee in accordance with his

rights under the contract of lease and that he obtained a subrogation from defendant's mortgage creditors for the amount paid.

The trial judge, in his written reasons for the judgment on this point, said "* * * the subrogation to which he refers is one which provides for the collection of the money paid out of rentals or royalties under the lease, and is in truth simply an additional payment for the lease."

After carefully reviewing the entire record we fail to find, either in the testimony or in the proceedings, or any documents filed in evidence, anything supporting the findings of the lower court. But we do find that Lock Paret, agent of the Stanolind Oil and Gas Company, testified that he did pay the sum of $800 to be applied on the outstanding mortgages affecting defendant's property to the Calcasieu National Bank, in Liquidation, and to the Federal Land Bank, but that said payment was made for his protection and in accordance with a clause in his contract of lease whereby he became subrogated to the rights of the mortgage creditors to that extent. We must, therefore, reduce the amount allowed by the trial judge from $1,100 to $300.

For the reasons assigned, it is ordered, adjudged, and decreed that the judgment of the lower court is amended by reducing the principal amount of the judgment from $1,100 to $300 and as thus amended the judgment is affirmed; costs of appeal to be borne by appellants.

ROGERS, J., absent.