52 So.2d 763

**JACOBS v. A. SOLOMON et al.**

No. 39467.

March 19, 1951.

Rehearing Denied April 23, 1951.

Henican, James & Cleveland and C. Ellis Henican, all of New Orleans, for defendants-appellants.

Joe Jacobs, in pro. per.

MOISE, Justice.

This is a suit to recover commissions alleged to be due under a contract of employment which existed between Joe Jacobs, a traveling wholesale clothing salesman, plaintiff herein, and A. Solomon, a partnership engaged in the manufacture of clothing and composed of Abraham Solomon and his sons, Max and Herbert Solomon. Before the trial of the case, Abraham Solomon died, and his widow and four children, Dr. Bernard Solomon, Mrs. Lawrence H. Strug, Max and Herbert Solomon, having accepted his succession, were made parties to the suit, the last two named being already joined as defendants by virtue of their interest in the partnership.

The plaintiff claims a total indebtedness of $7,700.00. Of this amount $3,500.00 includes: (1) commissions which he contends were *wrongfully* computed by *reduction* of a previously agreed commission rate from 7% to 3½%, as to certain types of goods, where delivery was actually made, and (2) commissions to which he contends he was entitled by virtue of an alleged agreement with Solomon to continue crediting Jacobs with commissions on orders emanating from customers whom he had originally secured, although on whom he may not have called in each subsequent season. The balance of Jacob's claim—$4,200.00—represents commissions which (based on sales for previous years to accounts worked up by him) he would have earned in 1944–1945–1946, had Solomon continued to allocate to said accounts the same percentage of its output, in lieu of bypassing them completely and selling direct to other customers, for whose patronage Jacobs could not claim any credit, or commissions.

The defendant denied that the agreement of employment called for a flat 7% commission on the net sales volume of merchandise which plaintiff Jacobs was to sell for them, but rather for a rate that varied according to the type of merchandise sold, i. e., 3½% on khaki pants, jobs, close-outs of a line, specially priced merchandise, and suits manufactured by manufacturers other than Solomon; 7% on regular merchandise. Defendant also denied that the partnership ever made any agreement with Jacobs to reserve any percentage of its seasonal production for sale to those accounts, or to give them priority over its other customers, or to refrain from soliciting business in the New Orleans area independently of its salesmen. It further claimed that the firm had always reserved to itself the right to accept or reject the orders which its salesmen secured through active solicitation, or which it received via mail.

Plaintiff Jacobs requested trial by a jury, which awarded him judgment in the round sum of $1,500.00. Defendants appealed,

and plaintiff answered the appeal, praying for an increase in the judgment.

The issues are purely factual: what were the actual terms of the agreement of employment, and what amount, if anything, is due and owing to plaintiff thereunder.

The record reveals that Joe Jacobs entered the employ of A. Solomon in November, 1940, and left their employ in July, 1946. It appears that in the clothing manufacturing business there are two selling seasons: summer wear is sold in the autumn preceding, the "season" beginning in October and ending in the early part of December before the Christmas rush, and fall wear is sold in the spring preceding, the "season" beginning in April and ending in May. It was customary for the Solomon firm to advance to Jacobs a certain amount for estimated traveling expenses while he was on the road, and then on or about August 1 of each year to make an accounting with him, in which Jacobs would be credited for the net sales volume which he had sold (gross amount of sales orders less cancellations and return of goods) and debited for the traveling expenses advanced and other withdrawals made. In other words, the percentage which Jacobs received had to suffice for both his expense and his actual compensation.

The evidence sustains Jacob's contention that he was to receive a flat 7% commission, on all the merchandise he sold, with the exception of khaki pants; as to this item his version of the agreement is

not convincing. The record is fairly clear that he strenuously objected each time the Solomons suggested that he sell on any basis other than a flat 7% (except as to khaki pants), and that as a matter of fact he had to sell on that basis in order to make bare expenses *and* some compensation over and above those expenses. One may be a lord of logic, a master of expression and compression, but it would hardly be possible to overcome a natural law of creation—that man works for his own living, and not for sheer altruism. The evidence also preponderates that the Solomon firm did agree to give Jacobs credit for mail orders and house sales (i. e., sales made by the firm direct to a customer, without solicitation) where Jacobs had previously introduced the Solomon lines of goods. There is no doubt, therefore, that Jacobs did not receive the full amount to which he was entitled under his agreement of employment. However, the record is in such shape and such condition that it is impossible to determine with any reasonable degree of legal certainty whether the amount is equal to the claim of $3500.00, or is more, or less.

On the trial of the case no accounting experts were produced, but the litigants themselves went over item after item on order and ledger sheets, and indulged in a battle of figures, which lasted over several days, and as far as *proving* totals, accomplished nothing. To complicate the situation further, Jacobs charged that 31 pages had been removed from the Solomon ledger, and that

the total net sales figure reflected therefrom was incomplete. The jury made an award of $1500.00, but the record does not indicate to what portion of Jacobs' claim this amount applies. But as any additional amount which may be due Jacobs arising both from the application of the flat 7% commission to all items sold by him (except khaki pants) and from the crediting of such commissions on house sales made subsequent to his initial solicitations, as above stated, involves detailed mathematical computations by accountants, it is necessary to remand this case for such purpose only.

■ However, the plaintiff has failed to establish that his employer agreed to reserve any portion of its output to take care of the needs of Jacob's customers, or that it was under any obligation to accept automatically such orders as Jacobs secured. Since this allegation is not substantiated by the evidence, the claim for $4200.00 commissions that would, or might, have been earned must perforce be denied. If the employer wished to cut costs by dealing directly with customers whom Jacobs had not solicited, it was free to do so. And the courts will not render an award for speculative damages. Gebelin v. Hamilton & Scott, 18 La.Ann. 646; Ferguson v. Britt, 191 La. 371, 185 So. 287; Spencer v. Luckenbach Gulf S. S. Co., Inc., 197 La. 652, 2 So.2d 53; Bohn v. Cleaver & Lindsey, 25 La.Ann. 419; and Day Bros. Gilham & Winton, Inc., v. Marsan, 171 La. 545, 131 So. 665.

■ The judgment here is one by jury, and not by judge. Laws are pumped into them which they cannot comprehend, and there is a giving of testimony they are unable to analyze or remember. They often chafe under restraint and are in no condition of mind to analyze the masses of evidence where a proper computation must be made by experts and instead of being the ancillary of justice, very often become the medium of confusion. We fully appreciate the difficulties under which the able district judge labored. There are so many restrictions imposed that a judge would feel it an indelicate matter to take the case away from a jury and cause a delay by discharging them until a fixed date, in order that an accountant could make an examination and give a report to the court. He very properly left to this Court to prescribe a remedy for the predicament found in the case as to the record as made up. To render a more exact justice, a remand is necessary so that the district court may award, after additional evidence, a greater amount, or subscribe to the amount named by the jury. We do not mean to say that the jury did not do its full duty nor that any of the litigants should be denied the right of a trial on remand by a jury after the report of an accountant, if so desired, but we do say it is not the work of a jury, a district judge, nor this Court, to be a bookkeeper or an accountant; that is a duty imposed on the litigants, to present understanding evidence —not only with reasonable certainty as to a part, but as to the whole.

For the reasons assigned, it is ordered that the judgment appealed from be annulled and set aside, and that this case be remanded to the Civil District Court for the Parish of Orleans, Division B, for further proceedings consistent with the views herein expressed and in accordance with law; the defendants to pay all costs of this appeal, all other costs to await the final determination of this case.

On Application for Rehearing

PER CURIAM.

In an application for a rehearing, counsel for defendants direct our attention to certain language of our opinion which they contend indicates that, on the retrial which we have ordered, the jury must find for plaintiff in the sum of $1500 or more even though the evidence does not support such a verdict. While the language referred to by counsel, if considered by itself, may be viewed as a restriction upon the trial judge and jury, a reading of the opinion as a whole is sufficient to dispel this conception. In any event, it was not our intention to place a restriction upon the decision to be reached by the jury or judge after hearing the evidence on the new trial which we have ordered and the case was remanded for such new trial without limitation, either as to the evidence or the verdict or judgment upon such evidence.

The application for a rehearing is refused.