343 So.2d 292 (1977)
STRATTON-BALDWIN COMPANY, INC.
v.
Jim BROWN, d/b/a Jim Brown Carpets.
No. 11107.
Court of Appeal of Louisiana, First Circuit.
February 14, 1977.
Rehearing Denied March 21, 1977.
*293 Michael E. Nolan, Vance E. Ellefson, New Orleans, for plaintiff and defendant in reconvention Stratton-Baldwin Company, Inc., Appellee.
Charest D. Thibaut, III, Baton Rouge, for defendant, third party plaintiff and plaintiff in reconvention Jim Brown, etc., appellee.
H. Evans Scobee, Baton Rouge, for third party defendant Congoleum Corp., appellant.
Before LANDRY, COLE and CLAIBORNE, JJ.
LANDRY, Judge.
Appeals have been taken herein by Stratton-Baldwin Company, Inc. (Stratton), a distributor of carpeting and floor covering, and Congoleum Industries, Inc. (Congoleum), a carpeting manufacturer, from judgment against Stratton on reconventional demand of defendant, Jim Brown (Brown), in Stratton's suit against Brown on open account for carpeting and floor materials purchased by Brown, and judgment in favor of Stratton on its third party demand against Congoleum. Brown, although cast *294 in judgment on Stratton's main demand, did not appeal. Brown did, however, timely answer the appeal by Stratton, but failed to answer the appeal taken by Congoleum. We affirm the judgment rendered in Stratton's main demand against Brown. We amend the judgment rendered on Brown's reconventional demand against Stratton by reducing the amount thereof, and also amend the judgment on Stratton's third party demand against Congoleum by reducing same correspondingly.
Stratton sued Brown for $38,171.14, representing the balance due on carpeting, hardware and flooring material sold Brown on open account during the period March 3, 1973, and July 11, 1974. Brown answered admitting the purchases and claiming failure of consideration due to the defective nature of the goods. Brown also reconvened against Stratton claiming $26,548.29 in expenses allegedly incurred in remedying defects in carpeting and floor covering which Brown sold to his retail customers. In addition, Brown third partied Congoleum, as manufacturer of the allegedly defective materials, asserting Congoleum's solidary liability with Stratton. Besides his expenses, Brown seeks recovery of damages for loss of profits and business reputation, and mental anguish.
As defendant in reconvention, Stratton third partied Congoleum seeking judgment against Congoleum for whatever sum Stratton might be cast in Brown's reconventional demand. Stratton also filed an exception of no cause of action to Brown's reconventional demand for loss of profits, damage to business reputation and mental anguish. Lastly, Stratton filed an exception of prescription to all of Brown's claims on the ground that Brown had knowledge of the defects more than one year prior to the filing of Brown's reconventional demand. Congoleum filed an exception of no cause and no right of action to Stratton's third party demand.
The trial court sustained Stratton's exception of no cause of action to Brown's claim for loss of profits, loss of business reputation, and mental anguish. The lower court did not pass upon either Stratton's exception of prescription or Congoleum's exception of no cause and no right of action.
Judgment was rendered below in favor of Stratton against Brown in the pre-trial stipulated sum of $37,306.04, and in favor of Brown, in redhibition, on his reconventional demand against Stratton, in the amount of $21,219.35, based on the finding that Brown established retail sales in the amount of $29,946.50, for which Brown was paid in full by his customers but concerning which Brown received complaints. From this sum the trial court deducted credits in the amount of $8,727.15 allowed Brown by Stratton and/or Congoleum. Judgment was rendered in favor of Stratton against Congoleum in the sum of $21,219.35 on Stratton's third party demand. Brown's demands against Stratton and Congoleum for alleged loss of profits, loss of business reputation and mental anguish, were rejected.
On appeal it is conceded by all concerned; (1) the trial court correctly found Brown made total retail sales in the sum of $29,946.50 concerning which complaints were received from Brown's customers; (2) Brown expended the sum of $12,685.55 in attempting to repair defects and satisfy his customers; and, (3) Brown was allowed credit in the aggregate of $8,727.15 by Stratton and/or Congoleum in offset of Brown's expenditures to satisfy his customers.
The record establishes that Brown is experienced in the field of floor coverings and carpeting. Between 1969 and 1974, Brown purchased numerous floor covering items, including carpeting and hard surface floor coverings and products, from Stratton, a distributor of such items. The volume of Brown's purchases made him one of Stratton's preferred customers. In the period 1971-1973, approximately 10% of Brown's purchases consisted of 2,824.8 square yards of a material known as "Monogram Cushion Vinyl", a¼ thick vinyl floor covering, and "New Dimension" floor covering, of which 2,203 yards were allegedly defective. Congoleum *295 manufactured all of the products in question and sold them through its distributor, Stratton. It is conceded that the items in question were defective in that the materials delaminated, the seams separated within a few months of installation and pulled away from the wall boards, and bubbles appeared under the hard floording, all of which made the products unsightly and at times hazardous to Brown's customers, the eventual purchasers and users.
Brown became aware of the defects in 1971, when he began receiving complaints from his customers. Nevertheless, Brown continued to purchase the same materials in reliance upon Stratton's assurances the products were sound and that the difficulties reported were probably due to faulty installation. Brown felt that, because he had in his employ two capable and experienced installation men, he would not experience the same degree of difficulties then being encountered by other floor covering retailers handling these same products. From 1971 to early 1973, the complaints received by Brown were minimal.
When a complaint was received Brown made diligent efforts to remedy the defect encountered. He then reported each incident to Stratton, accompanied by an explanation of the items of expense incurred in effecting the required repairs. Stratton refered each instance to Congoleum and upon approval, Congoleum issued Stratton a credit memo for the goods involved. Stratton then credited Brown's account for the same merchandise. In some instances, Stratton gave Brown credit for merchandise before obtaining Congoleum's approval, because of Brown's preferred customer status. To maintain his business reputation Brown, in many instances, took corrective measures before receiving assurance from Stratton that he would be credited with the expense thus incurred.
Of the 2,824.8 square yards of Monogram Cushion Vinyl involved, Brown received complaints concerning 2,203 yards, or 80% of the sales of this product, as compared to 12% complaints received by retailers of this same product in Brown's trade area. In an effort to solve the problem for the mutual benefit of all concerned, several meetings were held between Brown and representatives of Stratton and Congoleum. On three occasions Congoleum changed the consistency of the adhesive which it recommended be used in installation, which new product Congoleum believed would minimize fabric shrinkage and consequent separation of seams. Despite all attempts at corrective measures, continued and increasing complaints were received concerning Monogram Cushion Vinyl. As a result, Congoleum ceased marketing this product in 1974.
In 1973, Brown began experiencing financial difficulties and became delinquent in his account with Stratton. Stratton pressed for payment and Brown countered with a demand that Stratton and Congoleum provide additional assistance in making repairs and reimburse Brown further for expenses. On April 11, 1974, a meeting was held to discuss the matter, at which time Congoleum's representative informed Brown that no credit, refund or assistance was due Brown for such repairs or replacement as Brown then complained about. Brown discontinued payment on his account with Stratton, and this suit ensued.
Congoleum and Stratton argue: (1) Brown's reconventional demand is not in redhibition because Brown's customers, the ultimate purchasers and users of the goods involved, are in possession of the merchandise, which Brown cannot return, and none of these individuals have sought rescission of Brown's sales to them; (2) Brown's claim is in contract or tort and, in either event he may not recover for loss of profits, damage to business reputation or mental anguish; (3) Brown's judgment in reconvention against Stratton should be reduced to $3,958.40 because Brown incurred stipulated expenses of $12,685.55 repairing defective flooring and carpeting sold to customers from whom complaints were received and against which Brown has received credit in the sum of $8,727.15; and, (4) alternatively, if Brown's recovery is in redhibition the award to him is excessive because under the *296 doctrine of redhibition Brown is entitled only to be made whole.
Stratton and Congoleum suggest that since Brown has been paid in full, including his profit, on all sales made concerning which complaints were received, Brown is entitled to recover, under any theory, only the sums expended in making these sales good, which recovery will place him in the same position he occupied before any complaints were lodged. In this regard, it is pointed out that if the judgments are allowed to stand, Brown will receive the profits on all sales concerning which he received complaints, plus a windfall recovery of $17,260.95.
Brown maintains that whether his recovery be in tort, contract or redhibition, he is entitled to expenses incurred with respect to sales concerning which complaints were received, and also to loss of profits, damage to business reputation and mental anguish. He urges that the excess of $17,260.95 allowed by the trial court over and above his net expenses of $3,958.40 represents partial compensation for his loss of profits, loss of business reputation and mental anguish, which amount he considers inadequate and therefore should be increased on appeal.
Sale is a special form of contract expressly defined by law and concerning which the rights and obligations of vendor and purchaser are specifically prescribed. The following codal provisions are pertinent herein:
LSA-C.C. Article 2439.
"The contract of sale is an agreement by which one gives a thing for a price in current money, and the other gives the price in order to have the thing itself.
Three circumstances concur to the perfection of the contract, to wit: the thing sold, the price and the consent."
LSA-C.C. Article 2456.
"The sale is considered to be perfect between the parties, and the property is of right acquired to the purchaser with regard to the seller, as soon as there exists an agreement for the object and for the price thereof, although the object has not yet been delivered, nor the price paid."
LSA-C.C. Article 2475.
"The seller is bound to two principal obligations, that of delivering and that of warranting the thing which he sells."
LSA-C.C. Article 2510.
"If the seller, knowingly and dishonestly, has sold the property of another person, he shall be obliged to reimburse to the buyer all expenses, even of embellishments of luxury, that the buyer has been at improving the premises."
LSA-C.C. Article 2520.

"Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice."
LSA-C.C. Article 2531.
"The seller who knew not the vices of the thing is only bound to repair, remedy or correct the vices as provided in Article 2521, or if he be unable or fails to repair, remedy or correct the vice, then he must restore the purchase price, and reimburse the reasonable expenses occasioned by the sale, as well as those incurred for the preservation of the thing, subject to credit for the value of any fruits or use which the purchaser has drawn from it."
LSA-C.C. Article 2545.
"The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of the price and repayment of the expenses, is answerable to the buyer in damages."
LSA-C.C. Article 2547.
"A declaration made by the seller, that the thing sold possesses some quality which he knows it does not possess, comes within the definition of fraud, and ought to be judged according to the rules laid down on the subject, under the title: Of Conventional Obligations.
It may, according to the circumstances, give rise to the redhibition, or to a reduction of price, and to damages, including *297 reasonable attorneys' fees, in favor of the buyer."
Brown cites numerous authorities in support of his contention that economic losses, loss of business reputation and mental anguish are compensable elements in a breach of contract action. We note, however, that none of the cited cases involve breach of a contract of sale. For example: Tidwell v. Meyer Brothers, 160 La. 778, 107 So. 571 (1926), involved an action against a landlord for loss of profits resulting from the municipality's subsequent condemnation of the building leased; Holmes Brick & Salvage Co., Inc. v. Reo Construction, Inc., 253 So.2d 562 (La.App. 1st Cir. 1971), concerned a demolition contract; Preston v. Chrysler Motors Corp., 334 So.2d 486 (La.App. 1st Cir. 1976), was a suit in tort for damages sustained in an automobile accident; Jolley Elevator Co. v. Schwegmann Bros. Giant Supermarkets, 230 So.2d 640 (La.App. 4th Cir. 1970), involved a claim for damages for alleged failure to timely install an elevator; Transportation Equipment Co. v. Younger Brothers, 34 So.2d 347 (La.App.1948), was an action for an amount due for trailer repair; Harper v. Metairie Country Club, 258 La. 264, 246 So.2d 8 (1971), involved a construction contract; Meador v. Toyota of Jefferson, Inc., 332 So.2d 433 (La.1976), involved a claim for alleged defective repair of an automobile.
In Meador, above, the Supreme Court, declined to apply LSA-C.C. Article 1934(3), which allows recovery of damages for mental anguish, for breach of a contract having as its purpose the gratification of intellectual enjoyment or some convenience or other legal gratification. The Court in Meador, above, held that a plaintiff suing on a contract to repair an automobile could not recover damages for mental anguish resulting from breach of the contract. The Court also noted that while such damages are recoverable in tort they are not recoverable under a contract.
LSA-C.C. Article 1934, prescribes the general rules applicable to recovery in contract. It recites that in a case of breach of contract, damages are the loss sustained or the profits of which the offended party had been deprived. Section (3) of Article 1934, above, provides that where the contract has for its object the gratification of some intellectual enjoyment, whether in religion, morality or taste, or some convenience or other legal gratification, not measurable in monetary terms, damages are nevertheless due for its breach. In Meador, above, the Supreme Court declined to apply Article 1934(3), above, to a contract to repair an automobile. The Court reasoned that Article 1934(3), above, applies only where the principal or exclusive object of a contract is some form of intellectual enjoyment.
We find in this instance that Brown's claim is not founded in tort or upon a contract in which the principal or exclusive object is some form of intellectual gratification or enjoyment. Rather, we find that Brown's claim is predicated upon a contract of sale as defined in LSA-C.C. Article 2439. Consequently, we hold that the rights and obligations of Brown as purchaser and Stratton as vendor must be determined in the light of the hereinabove cited articles governing the contract of sale.
Since the goods sold were admittedly defective, Brown is entitled to relief under the laws governing redhibition. Brown was not aware of the defective nature of the merchandise at the time of purchase. We find the defects such that if Brown had known of their existence he would not have made the purchases.
In an action in redhibition, the purchaser is not entitled to rescission of the sale and recovery of the full purchase price unless he is in a position to return the purchased item. J. B. Beaird Co., Inc. v. Burris Bros. Limited, 216 La. 655, 44 So.2d 693 (1950). In such an instance the purchaser is entitled only to a reduction in price and recovery of his expenses, if any. J. B. Beaird Co., Inc. v. Burris Bros. Limited, above.
Pursuant to LSA-C.C. Article 2531, above, Brown is entitled to recover only his expenses if Stratton and Congoleum were unaware of the defects at the time *298 of sale. Damages for loss of profits and loss of business reputation are not recoverable unless the seller is in bad faith, meaning that the seller had knowledge of the defect at the time of sale. LSA-C.C. Articles 2545, 2547. Brown may not recover damages for mental anguish either under general contract law or the laws peculiarly applicable to a sale, because the sale in question did not have some form of intellectual gratification as its principal or exclusive object. Meador v. Toyota of Jefferson, Inc., above.
The authorities cited by Brown allowing recovery for mental anguish in tort cases are inapplicable because this action is not in tort.
The trial court rejected Brown's claims against Stratton and Congoleum for loss of business profits and damage to Brown's business reputation. Under the procedural posture of this case we must affirm rejection of these demands. Although knowledge of defects is attributable to Congoleum as manufacturer of the admittedly defective goods, such circumstance is a matter of no moment. Brown neither appealed nor answered Congoleum's appeal. Consequently, no relief can be afforded Brown as against Congoleum on appeal. LSA-C.C.P. Art. 2133; Morgavi v. Mumme et al., 270 So.2d 540 (1972).
Stratton, however, as a distributor, is not presumed to have knowledge of defects. Gordon v. Bates Crumley Chevrolet Co., 158 So. 223 (La.App. 2d Cir. 1935). The trial court concluded Stratton was in good faith. We find no error whatsoever in this determination.
The record discloses that Brown made sales to numerous customers who have not lodged complaints notwithstanding the defective nature of the goods sold them. Stratton and Congoleum urge that these claims have prescribed. We are unable to make such a determination considering that parties foreign to this cause may be affected thereby. We decline, under the circumstances, to consider this issue. We find, however, that Brown is entitled to recover against Stratton and Congoleum on any additional claims incident to the defective goods sold to customers, subject to all legal defenses available to Stratton and Congoleum.
We conclude that Brown is entitled to recover the expenses incurred in attempting to repair defects in materials sold to customers from whom complaints were received. Breaux v. Winnebago Industries, Inc., 282 So.2d 763 (La.App. 1st Cir. 1973). Since it is conceded Brown spent $12,727.55 in repairs and was allowed credits by Stratton in the sum of $8,727.15, we find Brown entitled to judgment in reconvention against Stratton in the sum of $3,958.40. It follows that Stratton is entitled to judgment on its third party demand against Congoleum in the sum of only $3,958.40.
IT IS ORDERED, ADJUDGED AND DECREED that:
(1) the judgment in favor of Stratton against Brown in the sum of $37,306.04 be affirmed; (2) the judgment in reconvention in favor of Brown against Stratton be amended and reduced from the sum of $21,219.35 to the sum of $3,958.40; (3) the judgment in favor of Stratton on its third party demand against Congoleum be amended and reduced from $21,219.35 to the sum of $3,958.40; and, (4) Brown's rights against Stratton and Congoleum to recover on any additional claims incident to the defective goods sold to customers are recognized and preserved, subject to all legal defenses available to Stratton and Congoleum; all expense of this entire litigation to be paid by Stratton and Congoleum.
Affirmed in part, amended in part and rendered.