LE BLANC, Justice.
This suit is brought by Sam Mabry Lumber Co., a commercial partnership having its domicile in the town of Liberty, Mississippi, and composed of Sam Mabry and Sam Mabry, Jr., to recover from the defendant, Midland Valley Lumber Co., a Missouri corporation, doing business in Louisiana, an alleged indebtedness in the sum of $4510.81 on a sale of a quantity of rough lumber to be shipped in railroad cars from Woodville, Mississippi. For the sake of brevity, the plaintiff will be hereafter referred to as “Mabry” and the defendant as “Midland”.
The order was placed by Midland on December 4, 1946, and bears No. 1065. It is in printed form with the blank spaces filled by typewritten words and figures and it is duly signed by both parties, Mabry having accepted it on December 5, 1946. It calls for approximately 400,000 feet of yellow pine and approximately 53,000 feet of hardwoods to be shipped as ordered f. o. b. Woodville, Mississippi or equivalent shipping point.
Under authority of this order, Mabry shipped seven railroad cars of lumber for Midland between the date of its acceptance on December 5, 1946 and January 7, 1947. During this time Mabry applied to Midland for an advance on the lumber. Midland advised Mabry that it would be willing to make them an advance if it was sure that they had the quantity of lumber on hand. On December 19, 1946, Midland dispatched its agent and representative, V. O. Jones, to the scene of the lumber yard situated in the Parish of West Feliciana, where he visually inspected, inventoried, estimated or tallied the lumber and made his report. This was a rough estimate merely for the purpose of ascertaining if there was anywhere near the amount of lumber claimed to be on hand. He did not inspect as to grade, quality, condition, etc.
In order to protect its interest in such lumber, and to enable it to have insurance coverage, Midland insisted upon an act of sale which was for its protection. This so-called act of sale was executed on January-8, 1947. However, there were several defects in the act of sale. In the first place it was not dated and in the second place it was drawn up by Bert E. Durrett, Notary-Public in Baton Rouge, before whom it purports to be executed, but was not signed by him, nor by the parties in his presence, but rather Midland signed "the act in Missouri before H. E. Turina, Notary Public and’ Mabry signed it in Mississippi.
Without setting out the whole of Order 1065, we deem it proper to quote its pertinent provisions:
“Item: Pine — 1x4 & wider arid mostly 2x4 wider #3 -C&Btr Pine, con- *887 taming all of the grades-with nothing picked out-the #3, the #2, the #1, ‘C’, including all the B & Better, rough.
Hardwoods — 8/4 #2 Common & Better Mixed soft hardwoods.
Price: $57.50 less 2% on pine 45.00 net on hardwoods
Shipping instructions : To be sent by separate release on each car.
Terms: Cash, less 2% discount, as loaded.
Inspection: (To be inspected by our inspector, otherwise the Lumber is to be inspected according to the Rules and Regulations of the National Hardwood Lumber Association and in the event of Disapproval of the Inspection of the Shipper, Inspection by a National Inspector at our option shall govern.)
Remarks: It is understood this is dry pine and that it will be properly trimmed when loaded into the car.
PLEASE ACKNOWLEDGE RECEIPT OF ORDER BY SIGNING AND RETURNING ATTACHED DUPLICATE, AND IF YOU ARE UNABLE TO FILL AS SPECIFIED AND SHIP BY DATE NAMED, NOTIFY US AT ONCE. OBSERVE OUR SHIPPING INSTRUCTIONS CAREFULLY. FORWARD INVOICE AND BS/L TO US PROMPTLY.” (ITALICS OURS.)
Under the purported act of sale, this order was referred to and made a part thereof. Upon the execution of the act of sale, Midland paid $11,500 in cash and, according to its terms, the remaining unpaid balance of $11,500 was to be paid “as and when the said lumber” was shipped by Mabry on instructions from Midland.
Subsequent to the date of the act of sale Mabry continued to ship the lumber purchased by Midland as and when instructed. However, prior to completion of the shipment of all the lumber covered by the original order, Midland advised Mabry by letter on January 13, 1947, that it desired to buy an additional 100,000 board feet o-f pine lumber on a bill of sale to be forwarded. In accordance with this request, two railroad cars of pine lumber were shipped on instructions containing a total of 34,626 board feet at a billing price and sum of $1,929.13. No further shipments on that order were made by Mabry, as no further instructions were received by him for shipment.
By February 19, 1947, Mabry had shipped 27 railroad cars of lumber to Midland, which included all the lumber on Order No. 1065 (except 13,940 feet of rough #2 hardwood valued at $313.65 that was refused by *889 Midland) plus two cars shipped on the additional order for 100,000 board, feet requested on January 13, 1947, as mentioned before.
On February 25, 1947, Midland issued six checks payable to the order of Mabry, all drawn on Mutual Bank and Trust Company, St. Louis, Missouri, the sum total thereof being $2,268.03, in payment of lumber purchased by it and shipped on its instructions.
On March 3, 1947, Midland issued “Stop Payment Orders” on the six checks above mentioned on the ground that the lumber did not conform to the grade required by shipping releases and instructions. Mabry then instituted this suit on May 28, 1947 for the sum of $4,510.81, as already stated, that sum representing $2,268.03, the amount of the six checks on which payment had been stopped; $1,929.13, the amount due for two additional cars of pine lumber and $313.65 for hardwood lumber refused by Midland. .
Midland, in its answer, denied liability to the plaintiff in any amount, setting up as its defense the breach of contract on the part of the plaintiff, in that the several carloads of lumber shipped did not conform to agreed requirements “because of inferior grades, improper trimming, and because of the fact that the lumber was shipped green and not air dried as called for.”
Assuming the position of plaintiff in re-convention, Midland claimed damages because of loss due to shipment of inferior lumber by plaintiffs, and cancelled orders, and loss of profits, in the sum of $9,078.48.
Plaintiff filed an exception of no cause or right of action to the reconventional demand of the defendant which was referred to the merits by the trial judge.
There was judgment below dismissing the demands of plaintiff and judgment rendered in favor of defendant on its reconventional demand in the amount of $4,853.98 which was the amount of damages claimed by the-defendant less the sum claimed by it to be loss of profits of future sales, because of the speculative nature of such damages.
From this judgment, plaintiff has appealed and defendant has answered the appeal asking that the amount of the judgment awarded it be increased to the amount originally claimed.
Counsel for plaintiff complain that the district judge did not pass on the exception of no right and no cause of action filed by it to the defendant’s reconventional demand. The contention made on this exception is based on the proposition that the whole contract between the parties resulted from what is said to be the authentic act of sale executed on January 8, 1947, under which, it is urged, the rights and obligations -of the parties became fixed and that the lumber belonged to the defendant with no obligation on the part of plaintiff to preserve it. It is urged that the act constituted full proof of the agreement contained in it, against all contracting parties, and in *891 the absence of an allegation of forgery, the ■objection to the admissibility of most of the testimony concerning grade and quality should have been sustained. Article 2236 of the Civil Code is cited as authority. 'That Article reads as follows: “The authentic act is full proof of the agreement contained in it, against the contracting parties and their heirs or assigns, unless it be declared and proved a forgery.”
It is purely an assumption on the part of •counsel, of course, that the so-called act of sale constituted the contract in this case. In the first place, by the allegations of its ■own petition, plaintiff bases its cause of action on defendant’s order of December 4, 1946 which it duly accepted and which is referred to as Order No. 1065. The only reference made to an act of sale is in a paragraph of the petition in which it is alleged that “the aforesaid order (Order No. 1065) later reduced to and incorporated in an act of sale, passed before Bert E. Durrett, Notary Public in and for the Parish of East Baton Rouge, Louisiana,” called for certain grades of lumber. Later on, it is alleged that the defendant, “contrary to their contract and Order No.' 1065, failed and refused to accept delivery or issue releases of 13,940 feet of rough No. 2 hardwood lumber * * *
Further it is to be noted that the petition also contains this allegation: “The said lumber was inspected and inventoried by defendant and/or its agents; was shipped upon instructions and releases issued by defendant, that your petitioner’s liability and responsibility ceased upon the loading and sealing of each car as the releases were issued and Bills of Lading forwarded to the defendant.” Clearly that allegation regarding its responsibility and liability is inconsistent with plaintiff’s present contention that at the signing of the purported act of sale on January 8, 1947, the lumber belonged to the defendant and that its (plaintiff’s) obligations ceased. In fact it is impossible to -reconcile any of the plaintiff’s allegations in its petition with the pretention that the so-called act of sale embodied the whole contract and agreement between the parties.
Counsel’s statement that the district judge did not pass on the exception is not exactly correct because the minutes of court show that on October 27, 1947, on motion of counsel for exceptor (and there was but one exception filed in the case) the exception of no cause and no right of action was referred to the merits. In view of the nature of the exception we think that this was the proper way in which to have it considered. The purported act of sale was so loosely drawn, and was executed with so little attention given to the necessary requirements of an authentic act, that necessarily some doubt arose as to whether it was intended to supplement the purchase order of December 4, 1946 and of itself become the sole contract between the parties. As pointed out before and held by the trial judge, the evidence clearly indi *893 cated that it never was so intended. It was drawn in order to facilitate the defendant in making an advance on the lumber, as requested by plaintiff, no estimate having been made by defendant as to the quantity before December 19, 1946, and also for the purpose of showing that defendant had an insurable interest in the lumber.
The authorities cited by counsel are all based on situations where the deed or act of sale was found to be the contract between the parties; their rights and obligations were fixed by the terms thereof and they were held bound thereby. They are inapposite to the situation which exists in this case.
We find no merit in the contention of counsel for plaintiff on this point and proceed to consider the next proposition advanced 'by them; that is that the pine lumber was sold subject to the rules of the Southern Pine Association which serve as a guide in the pine lumber industry in the south, and more particular, rule 150 of the standard specifications for that association is invoked to the effect a change in manufacture of the lumber after it is shipped, except with consent of all parties, will release the seller from- the guarantee as to grade. Rule or Section 150 of the Southern Pine Inspection Bureau reads as follows: “Lumber must be accepted in grade in the form in which it is shipped. Any subsequent change in manufacture, mill work, or kiln drying, -will prohibit an inspection for the adjustment of claims, except with: the consent 'of all parties interested.”
All the lumber purchased in this case was. rough lumber and had to be mill-worked, before delivery by Midland to its customers.. Each car shipped by Mabry was consigned to Midland and shipped to a planing mill' either at Memphis, Tennessee or Jackson,. Mississippi to be processed. It is urged by plaintiff that the change in manufacture from rough to dressed lumber which took place after re-milling had the effect of ending its guarantee as to grade and no adjustment of claims could be made because there was no consent as required by section 150 of the SPIB.
Aside from the fact that the testimony fairly shows that plaintiff was well aware that rough lumber is not merchantable except for a few specific purposes, and knew also that the lumber it sold to Midland would have to be re-milled, the proof is-otherwise most convincing that in two essential particulars the lumber did not comply with the terms of Order No. 1065, or the releases issued, when it reached the-planing mills, both at Memphis and at Jackson and before its form was changed, for most of it was found to be wet and green and untrimmed.
The evidence further shows that the lumber was never exposed to weather conditions at the mills; that it was taken from one car and after being processed was immediately loaded in another car and sent on to its destination. There is an abundance *895 of proof in the record that upon reaching destination, in several instances, it was found on inspection to be not only under grade but also very green and wet. Upon rejection in some cases, and claims for adjustments in others, it was inspected by certified inspectors of the SPIB and in all cases the moisture content was found to be in excess of the minimum 19% allowed under the standards of that Bureau.
We believe therefore, that defendant was justified in stopping payment on the six checks it had issued in payment of some of the lumber shipped on the original order of December 4, 1946, and in refusing to pay for the two carloads shipped on the additional order of January 13, 1947. It was also justified in refusing the hardwood which was never shipped and for which releases were never issued. With regard to this lumber the trial judge had this to say: “I am of the opinion that the preponderance of the evidence is that this hardwood lumber was scattered on the ground (on plaintiff’s yard) became wet and off grade and was unusable because it was not re-stacked.”
After a careful review of all the evidence the learned district judge was of the firm opinion that plaintiff had breached the contract and must suffer the consequences.
 In considering the defendant’s re-conventional demand the trial judge analyzed the defendant’s statement on which it is based. It is a lengthy, comprehensive statement of the account between the parties beginning with the first advance of cash made to plaintiff and covering every transaction in which a loss was sustained or an expense incurred and in which an adjustment had to be made. It also includes loss of profits on orders which it had and could not fill because of inferior grade of the stock. The claim on this last item amounts to the sum of $4224.50 and the total sum of all other items is $4853.98. The district judge refused the demand for loss of profits on orders which were never filled on the ground that the damages claimed thereunder were too speculative. This item forms the basis of defendant’s answer the appeal asking that the judgment in its-favor be amended by increasing the award on its reconventional demand. We are of' the opinion that the trial judge was correct in rejecting that item. The general rule is that in cases where damages are claimed for having been deprived of profits, the contemplated profit must be proved to be certain and not merely conjectural or speculative. See Gebelin v. Hamilton, 18 La. Ann. 646; Ferguson v. Britt, 191 La. 371, 185 So. 287; Spencer v. Luckenbach Gulf S. S. Co., 197 La. 652, 2 So.2d 53.
With regard to the other items-the district judge apparently accepted the figures in the statement produced by the defendant which was supported by the testimony of one of its witnesses. The statement was not controverted nor does the amount seem to be questioned on this appeal. In the absence of a showing of mani *897 lest error the finding of the trial judge will be sustained.
For the reason stated, the judgment appealed from is affirmed at the costs of the plaintiff, appellant herein.-