McINNIS, Judge.
This appeal is from a judgment of the district court dismissing plaintiff’s demand as of non suit.
The demand is for damages for alleged partial breach of an alleged contract entered into between the parties, wherein defendant agreed to buy for and deliver to plaintiff twelve top grade cows, either with *670 calves by their sides or to calve in December, 1950 or January, 1951.
Plaintiff, a postal worker in the New Orleans post office had some money he wanted to invest for a quick profit. Defendant raises and sells registered cattle and has been in that business for a long time. The first talk between plaintiff and defendant took place at defendant’s home on Thanksgiving day, November 23, 1950. Present at that time were plaintiff, his wife and his brother-in-law, Lewis Blakewood. Plaintiff had not had any experience in the cattle business and wanted to try it, and asked defendant about buying some cows. Defendant told him he did not have any cows such as plaintiff wanted, but that he could go to Texas and buy them for him. Finally on November 25th an agreement was made for defendant to go to Texas and buy twelve cows for plaintiff and twelve for Mr. Blakewood and five for a sister, Mrs. Lillian Jackson, and the three of them bought one for Mrs. E. G. Blakewood, mother of Mr. Blakewood and Mrs. Jackson. There is some disagreement as to whether the cows would have calves by their sides or would be “heavy springers”, meaning they would have calves in a month or so, but this is unimportant because when delivered and accepted none of them had calves by their sides.
Defendant went to Lomeda, Texas, some 465 miles from his home in Cheneyville, Louisiana, where he bought the cows from what he says is a reliable cattle raiser and dealer, and had them transported to Che-neyville in bonded trucks. Two of the cows had not been bred, but were bred before taking them away from Cheney-ville. Five were to be delivered to the home of Mrs. Jackson and the twenty-four for Mr. Blakewood and plaintiff and one for Mrs. Blakewood were delivered to the home of Mrs. Blakewood where there is a pasture of some 95 acres. Twelve of the cows were branded alike, ten of them with another brand and two not branded. Plaintiff and Blakewood divided them by tossing .a coin, and plaintiff took the two not branded and the ten branded different from the twelve. The price paid by Mrs. Jackson was $225 each, and for the twenty-five $230 each.
Of the twelve cows taken by plaintiff ten calves were born, one on February 15, 1951, one March 30, 1951, one July 21, 1951, five from September 22 to 28, 1951 and two in November, 1951. One cow died about Labor Day in 1951 without having produced a calf and one cow did not have a calf.
About December 10, 1951 plaintiff and Mr. and Mrs. Blakewood purchased a bull and put it in the pasture with the cows belonging to all of them. It is reasonably certain that only the three first cows to have calves had been bred at the time they were delivered to plaintiff. The average gestation period for cows is shown to be 283 days. There is some testimony that some of these people told defendant about the failure of the cows to produce calves, and that he told them not to worry, the calves would come along. On September 5, 1951 plaintiff complained to the defendant that only three of the cows had calves, and at that time defendant offered to give back the money paid -for the cows and to pick them up, but plaintiff wanted $125 each for nine calves that had not been produced by the cows, and on November 24, 1951 filed this suit.
After reading the voluminous record and the well written and rather lengthy briefs filed by both plaintiff and defendant, we could very well say as did the district judge that the proof offered, admitting the warranty and its breach, is too uncertain and speculative to form the basis for any award, however taking into consideration the time and talent of the attorneys who tried the case and briefed and argued it in both courts, this course is hardly justified.
We agree that plaintiff fairly well established the agreement to buy the cows either with calves by their sides, or heavy springers that would shortly bring calves. The provision as to having calves by their sides was waived when delivery was accepted without any calves. We agree that defendant had superior knowledge of cattle, however we do not charge him with bad faith or fraud. We believe he thought the cows would produce calves in a short *671 time. In this he was mistaken as to nine of those plaintiff bought. We are convinced that plaintiff hoped to make a profit the first year by the sale of calves he hoped to raise, however, unless he is an extreme optimist he could hardly have hoped that he would have twelve calves worth $125 each in the fall of 1951, and even if he had sold twelve at that price it is unreasonable to •believe that there was no expense connected with raising them. Then there is for consideration some value for the seven calves that were born from September to November.
We agree that the articles of the Revised LSA-Civil Code and the cases cited by plaintiff are applicable to cases of this kind. Citing them all would serve no useful purpose here, because the facts are not the same. American Guaranty Co. v. Sunset R. & P. Co., 208 La. 772, 23 So.2d 409, one of the cases relied upon by plaintiff, involved false representations by which the plaintiff in that case was induced to sign quitclaim deeds to land in Louisiana which was very valuable for oil and gas, for a very nominal sum. The court found that the person making the representations knew at the time they were false, and for that reason set the deeds aside.
In the case of Dubois v. Phillips Petroleum Co., 221 La. 161, 59 So.2d 107 award was allowed for loss of rice crop by oil escaping from tanks owned by defendant. There the proof of loss was made with a reasonable certainty which has not been established in the instant case.
Mabry v. Midland Valley Lumber Co., 217 La. 877, 47 So.2d 673 involved recon-ventional demand for loss of profit anticipated from sale of lumber plaintiff failed to deliver, and there the court held that no award could be made because of the uncertain and speculative nature of the proof offered.
In the instant case several experienced cattle raisers testified to the uncertainty of raising calves by reason of the possibility of abortions and of the hazards calves are exposed to even after they are born alive. Conceding that these witnesses are overly pessimistic, we believe plaintiff was too optimistic. In any event we are unable to say, from the proof in this record that plaintiff should be awarded $125 each for nine calves, and any award of a lesser sum would be a pure guess.
For these reasons the judgment appealed from is affirmed at the cost of plaintiff, appellant in both.courts.