216 So.2d 153 (1968)
PELICAN PRINTING CO., Inc.
v.
Carlton H. PECOT, d/b/a Diamond Research Associates.
No. 2916.
Court of Appeal of Louisiana, Fourth Circuit.
March 4, 1968.
On Rehearing November 4, 1968.
*154 Reed, Reed & Reed, William M. Detweiler, New Orleans, for plaintiff-appellee.
Lawrence A. Wheeler, New Orleans, for defendant-appellant.
Before HALL, JOHNSON and TUCKER, JJ.
TUCKER, Judge.
In this suit plaintiff sought the following items of damages: (1) $614.00 for the printing of the May 1, 1965 issue of the newspaper, "Inside New Orleans," allegedly published by defendant; (2) $26,214.95 for profits lost as the result of breach of contract by the defendant; (3) $49.06 for miscellaneous printing charges; and (4) 33 1/3% attorney's fees on the amount of the award.
The case was tried before a jury which awarded plaintiff $7,000.00 damages and *155 $2,000.00 attorney's fees. Defendant, who has appealed from this judgment, urges the following errors: (1) the trial judge did not rule on his exceptions; (2) the jury erred in finding that there was a contract between plaintiff and defendant; (3) plaintiff did not prove its damages; and (4) the jury erred in allowing attorney's fees.
With regard to the first contention the record reveals that the trial judge dismissed defendant's exception of vagueness and referred his exceptions of no cause or right of action to the merits. In Brown v. Tauzin, La.App., 163 So. 764, reversed on other grounds, 185 La. 86, 168 So. 502, the court held:
"Defendant's counsel complains that the lower court did not pass on the exception of no cause and no right of action after same was argued and referred to the merits. * * * By referring it to the merits, thereby virtually requiring defendant to answer, and basing his judgment upon the merits, without reference to the exception, a judge in effect overrules the exception."
See also Palama v. Livaudais, 182 La. 1035, 162 So. 765, in which it was held that by referring an exception of no cause of action to the merits the judge, in effect, dismissed the exception. We find therefore that all the exceptions were effectively overruled.
With regard to the existence of a contract between plaintiff and defendant, the evidence is conflicting. Raymond H. Williams, general manager of plaintiff company, claims he was approached by defendant Carlton H. Pecot to print a newspaper called "Inside New Orleans" and that he had a preliminary meeting in the early part of February, 1965, with Mr. Pecot and Mr. Harold Bethune, the editor of the newspaper, to discuss a possible agreement. At a second meeting, Mr. Williams testified he told Mr. Pecot that while his company could do all the preliminary art and layout work, it did not have the facilities to do the actual printing which it intended to subcontract to Century Printing Company. At this time Mr. Williams testified he was under the impression that Mr. Pecot was doing business as Diamond Research Associates, which he did not known was a corporation. The letters "Inc." were not used behind the name Diamond Research Associates. After a series of negotiations regarding the details of the contract, a proposal drawn up by Mr. Williams was submitted on February 12, 1965 to Mr. Pecot. On February 25, 1965 it was accepted for a one-year term and signed by Mr. Bethune. The proposal was addressed to Diamond Research Associates and began with the words "Dear Mr. Pecot." Mr. Williams testified that at the time of this signing both Mr. Pecot and Mr. Bethune were present and that Mr. Pecot told Mr. Bethune to sign the proposal because Mr. Bethune was going to be the editor. An amendment to the proposal, addressed to Diamond Research Associates and beginning "Dear Mr. Pecot" was also signed by Mr. Bethune March 1, 1965. Mr. Williams did not recall whether or not Mr. Pecot was present at this second signing but assumed, because Mr. Pecot had told Mr. Bethune to sign the first document, that Mr. Bethune was acting as an agent for Mr. Pecot.
Both Mr. Joe Chambers and Miss Lynn Piglia, employees of plaintiff company, testified Mr. Pecot constantly supervised Mr. Bethune, criticized his work and finally fired him as editor.
On the other hand, Mr. Pecot testified that he was not a party to the contract; that it was not signed in his presence; that he had never designated Mr. Bethune his agent; and that the contract was strictly between Mr. Bethune and Mr. Williams acting as individuals. Mr. Bethune corroborated Mr. Pecot's testimony. However, we find there is ample evidence in the record to justify the jury's conclusion that Mr. Pecot did designate Mr. Bethune his agent; that he held himself out as an individual rather than as president of a corporation and thus was the real party to the contract.
*156 With regard to damages, we will first consider plaintiff's claim for $614.00 for allegedly printing the May 1, 1965 issue. There is no dispute that the first issue was printed March 13, 1965 and the newspaper was printed weekly thereafter through April, 1965 and that all such issues were paid for. However, plaintiff claims that the May 1, 1965 issue was printed but never picked up nor paid for. Mr. Pecot testified that he did not know whether the May 1, 1965 issue had ever been printed and there is no documentary evidence in the record that it was, in fact, ever printed. Plaintiff entered three issues of "Inside New Orleans" into the recordthose dated March 13, March 20 and April 24, 1965. However, as stated above, it is admitted that all of these issues were paid for and plaintiff failed to introduce a copy of the only issue for which it contends it did not receive payment. Moreover, there is no bill nor copy thereof to show payment was ever requested of defendant. Therefore we conclude plaintiff has not proven this item of damage.
Next we will consider alleged loss of profits claimed by plaintiff. Mr. Williams testified that he arrived at a figure ($26,214.95) for this item by determining the amount of profit on the last month's issues, i. e., those for April, and projecting that profit into the term of the unexpired portion of the contract, during which time defendant did not submit any more copy to print "Inside New Orleans."
However, only two checks paying for printingone dated April 3, 1965 for $713.43 and another dated April 9, 1965 for $577.69were introduced into the record and those were introduced by defendant. Therefore we do not have before us the total for the entire month of April upon which plaintiff based his projection. Moreover, even if we had this evidence, we would still lack a means to project loss of profits with any reasonable certainty because Mr. Williams merely testified that his company made 25% to 30% profit on each issue, without breaking down the cost of each item of production, and when questioned about the crucial amount of Century's Printing bill, he testified he did not know how much it was.
Loss of profits as an element of damage for breach of contract may be recovered only when they are not speculative or uncertain in their nature and are susceptible of proof with reasonable certainty. George W. Garig Transfer v. Harris, 226 La. 117, 75 So.2d 28; Ferguson v. Britt, 191 La. 371, 185 So. 287 and the cases cited therein; Mabry v. Midland Valley Lumber Co., 217 La. 877, 47 So.2d 673 and the cases cited therein. We find that we cannot allow an amount for loss of profits, as in this case such an award would be purely speculative and completely unsupported by any competent evidence.
We find, however, that plaintiff should be allowed the $49.06 for miscellaneous printing including press cards, bumper stickers, and letterheads because Mr. Pecot admitted ordering these items explaining only that he was not responsible for payment because the order was placed for Market Research, Inc. However, one of the press cards introduced into evidence shows that it was designed to identify staff members of "Inside New Orleans," affiliated with Diamond Research Associates. The letterheads were printed for Market Research, Inc. which Mr. Pecot identified at the time of the order as a corporation he "was forming." There is no evidence that Market Research, Inc. existed at the time of the order or that it ever came into existence at any time thereafter. Therefore, we find Mr. Pecot liable for the payment of the above items.
Finally, it is defendant's contention that no attorney's fees should have been allowed. It is well established that in the absence of statute or contract, attorney's fees are not allowed for the prosecution or defense of litigation. Bryan v. Ivey, La. App., 114 So.2d 88; Crabtree v. Hibernia Bank & Trust Company, La.App., 127 So.2d 782; Mississippi River Bridge Authority v. Gwin, La.App., 138 So.2d 175; Gulf States *157 Utilities Company v. Jones, La.App., 159 So. 2d 574; Hays v. Louisiana Wild Life and Fisheries Commission, La.App., 165 So.2d 556. As there is no provision in the instant contract for the payment of attorney's fees and no statute under which they can be awarded, we will disallow them.
For the above reasons the judgment is reversed in that it allows attorney's fees, and the amount of damages is reduced to $49.06. Otherwise, the judgment is affirmed; plaintiff to pay all costs of this appeal.
Judgment reversed in part, amended in part and affirmed in part.

ON REHEARING
Before REGAN, YARRUT, SAMUEL, CHASEZ, HALL, REDMANN and BARNETTE, JJ.
CHASEZ, Judge.
This rehearing is limited to the sole question of whether the May 1, 1965 issue of "Inside New Orleans" was published and, if so, whether payment for same is due plaintiff, Pelican Printing Co., Inc.
In our original opinion we concluded that plaintiff failed to prove that the May 1, 1965 issue was indeed printed. We stated, "* * * there is no documentary evidence in the record that it was, in fact, ever printed." We further stated, "Moreover, there is no bill nor copy thereof to show payment was ever requested of defendant." In its application for rehearing plaintiff brought to our attention that it introduced during the trial below as its exhibit number seven, a copy of a statement for charges due prepared by it, for the May 1, 1965 issue. Further plaintiff correctly pointed out that this exhibit was included in the record before this court on original hearing. Therefore at least to the extent that we found in our original opinion that there was no bill for the May 1st issue, in the record, we stand corrected. However to what extent this should change our finding that plaintiff failed to prove that the issue was printed and that it is due the $614.00 item of damages, is another matter.
When we attempt to resolve this question we turn immediately to the fact that plaintiff failed to introduce even one copy of the thousands it claims was printed. This neglect, by plaintiff, if indeed it was neglect, leads us to the almost inescapable conclusion that the paper was not printed. Further plaintiff did not offer one single witness who had been employed by Century Printing Company, the subcontractor who was alleged to have done the actual printing, to attest that the issue in question was printed. And finally the bill on which plaintiff relies so heavily, is but a carbon copy on a plain piece of paper prepared by the plaintiff with no indication that the original had indeed been submitted to defendant.
Weighing all of these factors, and after closely reexamining the record before us, we feel compelled to reach the same conclusion as did this court on original hearing. Plaintiff has failed to prove its items of damages and in particular as concerns us here, that the May 1, 1965 issue was in fact printed.
For the reasons assigned, our original opinion and decree herein are reinstated as the final judgment of this Court.
Original decree reinstated.