365 So.2d 1122 (1978)
AL SMITH'S PLUMBING & HEATING SERVICE, INC.
v.
RIVER CREST, INC., General Contractors.
No. 9493.
Court of Appeal of Louisiana, Fourth Circuit.
December 7, 1978.
Rehearing Denied January 16, 1979.
*1123 Lemle, Kelleher, Kohlmeyer & Matthews, William R. Forrester, Jr., New Orleans, for Al Smith's Plumbing & Heating Service, Inc., plaintiff-appellant.
Phelps, Dunbar, Marks, Claverie & Sims, Eileen Gleason Shaver, New Orleans, for Fidelity & Deposit Co. of Maryland, third party defendant-appellant.
John P. Nelson, Jr., Irving H. Koch, New Orleans, for River Crest, Inc., defendant-appellee.
Before LEMMON, STOULIG and SCHOTT, JJ.
STOULIG, Judge.
This appeal involves claims and counter claims between River Crest, Inc., a general contractor, and Al Smith's Plumbing & Heating Service, Inc. (Smith), his plumbing/roofing subcontractor, that arise from the alleged failure to perform the subcontracts.
As background, River Crest, Inc., agreed to construct an apartment complex for the Housing Authority of New Orleans *1124 (HANO), a federal agency, for $471,900. River Crest projected its direct costs to complete this job at $400,519; its overhead at $40,050 (10%); and its profit at $31,331. Signed June 6, 1974, the contract called for completion in 270 days; however, when delays were encountered in obtaining building permits, HANO granted a 45-day extension. Work commenced August 25, 1974 and at that time it was anticipated the job would be finished by June 1, 1975. Unfortunately River Crest erred. The job was accepted December 8, 1975 at a direct cost (labor and material for all subcontracts) of $498,570.72, which, in addition to washing out the profit and overhead River Crest had planned to cover with the contract price, also resulted in a $26,670.72 out-of-pocket loss. Needless to say when the plumbing and roofing subcontractor filed this lawsuit, River Crest was ready with a reconventional demand.
Initially, Smith filed suit against River Crest for $28,021.05, the balance due for work performed under both subcontracts and for damages in the sum of $20,000. Smith alleged it walked off both the plumbing and roofing jobs before completion because River Crest arbitrarily withheld payment for work that had been completed under both agreements.
River Crest answered denying these assertions and reconvened for damages caused by the alleged breach of Smith, specifically (1) cost of completion of the plumbing and roofing subcontracts; (2) loss of profit; (3) additional overhead and demurrage that accrued due to a long delay in completion and attorney fees. Fidelity and Deposit Company of Maryland (Fidelity), Smith's performance bond underwriter, was also joined as a party defendant under its solidary liability with the defaulting contractor.
The bonding company denied responsibility and alternatively pleaded a limitation of liability to $65,500, the amount bonded.
After a five-day trial, the district judge concluded Smith had actively breached both contracts although it did not act in bad faith in so doing and awarded these damages:

Cost to complete plumbing contract $35,800.00
Cost to complete roofing contract 3,024.00
Joist repair 1,418.00
Wage violations by Smith 1,175.00
Loss of profit (initially anticipated) 32,000.00
 __________
 $73,417.00

The judgment limited Fidelity's liability to $65,500 of this amount. Both defendants in reconvention were cast for $2,500 attorney fees. Fidelity obtained a third party judgment against Smith indemnifying it for any sums it must pay out because of rendition of the judgment on the reconventional demand. Smith and Fidelity have appealed; River Crest has answered the appeal.
Appellants have not conceded that Smith actively breached the subcontracts, but they have not urged reversal of that part of the judgment holding Smith liable for the amounts River Crest paid to Crescent City Plumbing and Flat Top Roofers to finish both the plumbing and roofing contracts. Nor do they challenge the amounts.
The evidence fully supports the active breach conclusion reached by the trial judge. Not only did Smith fail to complete the plumbing required, but his workmen additionally complicated matters by substandard performance. To illustrate, in installing plumbing stacks Smith's workmen cut large holes in the supporting floor joists that seriously weakened the structure. In one instance a 2-by-12-inch joist was cut to 2 by ½ inches. Eventually many joists had to be repaired or replaced by a carpenter hired by the general contractor. Additionally ventings for the gas heaters and the water heaters were improperly installed. Further Smith used P traps throughout when the contract called for drum traps, and this required River Crest to renegotiate this item with HANO before its acceptance.
From the evidence it appears Smith ran into financial difficulties in the course of performance and River Crest assisted with generous payments until it reached a point where it was concluded the stage of completion lagged way behind the percentage of the contract price previously advanced. Therefore we conclude Smith breached the agreement when it walked off *1125 the job without cause and affirm the completion costs awards itemized above. Without prolonged discussion we also affirm the $1,418 allowed for remedial work because the need to repair joists is apparent and the cost incurred undisputed. Fidelity is only solidarily liable for the expenditure to complete the plumbing contract and it did not bond the roofing job.
We next consider the loss of profit item. In this connection it is also relevant to discuss three items River Crest seeks to have added to its judgment by this court, namely: (1) $12,108 additional direct job maintenance expense incurred because the job was not concluded until approximately four months[1] after the scheduled completion date; (2) $3,584 demurrage for which HANO billed River Crest; and (3) additional superintendent costs of $3,898.54. All of these damages of necessity must stem from the breach by Smith if it and its surety are to be held liable for them.
It is interesting to note that in written reasons for judgment the trial court found as a fact:
"* * * [T]hat by far, the greatest cause of the delays encountered during the construction are attributable to numerous reasons. For example, delays were encountered in the delivery of materials. Furthermore, Crescent City Plumbing, the replacement subcontractor, caused many such delays which are well documented in the job logs. And River Crest itself contributed to the delay in the project completion by its failure to replace Smith timely. River Crest's contention that Smith's actions caused a loss of momentum which in turn caused the delays has no merit. * * *"
There is nothing in the record to establish how much of the delay in completion is solely attributable to Smith. Warren Rodick, a federal inspector charged with responsibility of inspecting this job for the agency, testified at one point that the plumbing contractor was directly responsible for a delay of approximately three months. On cross-examination he admitted this was a "wild guess." He also found that long after Smith was gone there was inadequate supervision and an insufficient number of skilled workmen on the job. Steven Sears, general job superintendent for River Crest, produced a log that he kept while this construction was in progress and from this it can be noted that other subcontractors were not performing within the time frame the general contractor had projected. Many trial hours were devoted to pointing out that Smith still had not completed the structural roughing-in stage by March 13, 1975, the day plaintiff's men walked off the job. It has been argued that this in itself was sufficient to shut down the job for several months. However, before the walls could be closed the electrical roughing-in also needed completion. We know from Sears' log that the electrical work in Building A (one of the two buildings covered by the contract) started January 6, 1975, and there is no evidence as to the date the electrical roughing-in work was completed or that its performance was delayed by Smith's default.
Like anything involving the federal government, this contract required exhaustive record keeping and paper work. For example, we know from the evidence that each subcontractor had to keep and turn in wage and hour logs so that HANO officials, in the spirit of benevolent paternalism, could make sure each worker was properly paid. From the Sears' log and the wage and hour tallies, it would appear that River Crest could have precisely reconstructed which subcontractor caused what delay. The silence as to timeliness of performance by all other subcontractors on the project is conspicuous.
We also make this same observation with respect to the cost of completion. River Crest has records of the total costs to perform the job. Had these been produced and River Crest demonstrated that every *1126 subcontractor but the roofer and the plumber completed their contracts at the figures projected by the general contractor in submitting its bid (or less), and within the time anticipated, we would agree that Smith should be cast in judgment for loss of profit and all other additional expenses attributable to the delay in completion. It is apparent from the evidence that the subcontracts were not all let when River Crest signed with HANO. In fact the record bears out that at the time of River Crest's bid based upon projected costs the low bids on the plumbing job were $3,000 less than that of Smith's, to whom the contract ultimately was awarded. To this extent the overhead and profit factors were overstated.
Lost profits are recoverable in an action for breach of contract where the amount can be proved with reasonable certainty. George W. Garig Transfer v. Harris, 226 La. 117, 75 So.2d 28 (1954). Loss of profit awards may not rest on speculation or conjecture (Ferguson v. Britt, 191 La. 371,185 So. 287 [1938]; Pelican Printing Co. v. Pecot, 216 So.2d 153 [La.App. 4th Cir. 1968]), unless direct evidence is not available to establish this element of damage. For example, where a loss of actual profit in an uncompleted prime contract is not computable, the aggrieved party may resort to customary or foreseeable profit as a measure of damage. Galloway v. Tenneco Oil Company, 313 So.2d 317 (La.App. 4th Cir. 1975). Also the trial judge specifically found that Smith's breach was not in bad faith so that recovery for damages by River Crest is limited by C.C. art. 1934(1).
Applying this law to our facts, we hold the evidence adduced fails to support the claim. Certainly Smith delayed performance. But to what degree? The best evidence rule requires a plaintiff to establish his demand with the best proof the nature of the thing would permit. As we have previously pointed out, River Crest should have within its records what proportion of the delay, additional expense, demurrage and loss of profit is attributable to the Smith breach. These records would reflect whether there were any overruns involved with the other subcontracts which either caused or contributed to the $98,000 overrun in the contract price experienced by the general contractor. From the evidence presented we are unable to determine if the loss allegedly suffered by the general contractor was due in part or entirely to the defaulting subcontractor or if it represents an underbid on the part of River Crest. Therefore, lacking this information we will amend the judgment of the trial court to delete the $32,000 loss of profit award. River Crest is entitled to 10% (customary overhead) of the difference between the amount Smith accepted to perform the roofing and the plumbing contracts and the amount the general contractor actually expended to have this work done. The difference between the actual cost of $114,284.30 and Smith's contract price of $75,257 resulted in the overrun on these two subcontracts of $39,027.30. River Crest then is entitled to be compensated $3,902.73 for its 10% indirect costs on the overruns attributable to Smith's breach. The balance of the overhead costs demanded and the demurrage cannot be awarded because River Crest has not proved by sufficient evidence these are attributable to Smith's breach. Fidelity's liability on this item is limited to 10% of the overrun on the plumbing contract only.
Appellants next contend the evidence is insufficient to support the wage violation assessment of $1,175. We disagree. By way of explanation, HANO by the contract may assess against the general contractor the difference between what the government sets as minimum for the work of any laborer and the lesser amount actually paid by the employer. In short, HANO billed River Crest a total of $1,175, representing total wage underpayments by Smith to its employees for work on this project. The amount of the bill was established by the testimony of River Crest's president, and the tally sheets used to tabulate the shortage were identified by a federal official. The wage aspect of damages is affirmed.
The award of $2,500 attorney fees to River Crest is next put at issue by appellants. *1127 Attorney fees may be awarded only if authorized by statute or stipulated by contract. Pelican Printing Co. v. Pecot, supra. In this case appellee presumably rests its claim on the following contract provision the only one dealing with attorney fees:
"11.20 The Subcontractor shall indemnify and hold harmless the Contractor and all of his agents and employees from and against all claims, damages, losses and expenses including attorney's fees arising out of or resulting from the performance of the Subcontractor's Work under this Subcontract, provided that any such claim, damage, loss, or expense (a) is attributable to bodily injury, sickness, disease, or death, or to injury to or destruction of tangible property (other than the Work itself) including the loss of use resulting therefrom, and (b) is caused in whole or in part by any negligent act or omission of the Subcontractor or anyone directly or indirectly employed by him or anyone for whose acts he may be liable, regardless of whether it is caused in part by a party indemnified hereunder."
We do not interpret this to include fees for a claim by the general contractor against the subcontractor for breach of contract and hold Smith is not liable for fees under the quoted section. If River Crest cannot recover based on contract, the surety likewise has no liability under the agreement because suretyship is an accessory promise to satisfy the debt if the party already bound defaults. (C.C. art. 3035.) The obligations in the agreement of suretyship cannot exceed those owed by the debtor. (C.C. art. 3037.) River Crest's demand for attorney fees under either R.S. 9:3902 or R.S. 38:2246 against Smith and/or Fidelity must fail because both require the creditor to recover the full amount of its demand and the judgment as amended will not satisfy this requirement.
Finally we note appellant Fidelity argues this court should award attorney fees against Smith under an indemnification agreement in the bond. Clearly fees should be awarded. While the surety and the plumber had different representation in the trial court, both counsel joined in the same brief submitted on behalf of both appellants in this court. On the surface there appears to be a conflict of interest because the bonding company attorney, while ostensibly representing Smith, is claiming against Smith urging us to impose attorney fees and to affirm a third party judgment of indemnification Fidelity obtained against Smith. Because Smith's attorney has joined in this brief we must assume the plumber tacitly concedes the attorney fees may be imposed. When questioned on this point in oral argument, Fidelity's attorney did not abandon the demand for fees, so we must assume her co-counsel, Smith's attorney, acquiesced.
In this connection counsel filed an affidavit reflecting a billing of $5,378.25 and costs of $710.33. We will award as fees and reimbursement for costs the amount submitted. No estimate of the value of services on appeal will be made because the attorney is not required to limit the billing for services to the figure fixed by the court. Indemnification requires the indemnitor to repay the expenditures of the indemnitee. It would be incumbent on Fidelity to establish a fee it was billed for services post trial if it expects the court to award the amount under an indemnification agreement.
In summary we hold:
1. Smith and Fidelity liable solidarily to River Crest for completion cost on plumbing contract $36,003.30, joist repair $1,418, and wage violations by Smith $1,175, totaling $38,596.30;
2. Smith liable to River Crest for roofing contract completion in the amount of $3,024;
3. Smith and Fidelity liable to River Crest for 10% overhead on the overrun of the plumbing contract, or $3,600.33;
4. Smith liable to River Crest for 10% overhead on the overrun on the roofing contract, or $302.40; and
5. Smith liable to Fidelity for attorney fees and expenses of $6,088.58.
*1128 For the reasons assigned the judgment is amended and affirmed and for the sake of clarity recast as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of River Crest, Inc., and against Al Smith Plumbing & Heating Service, Inc., and Fidelity and Deposit Company of Maryland in solido condemning defendants to pay $42,196.63 with legal interest from judicial demand.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED there be judgment in favor of River Crest, Inc., and against defendant, Al Smith Plumbing & Heating Service, Inc., for $3,326.40, with legal interest from judicial demand.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED there be judgment in favor of Fidelity and Deposit Company of Maryland and against Al Smith Plumbing & Heating Service, Inc., for $6,088.58 in attorney fees and legal expenses.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all other claims among the parties be dismissed. All costs of this appeal are to be borne equally by Al Smith Plumbing & Heating Service, Inc., and River Crest, Inc.
AMENDED AND AFFIRMED.

ON APPLICATION FOR REHEARING
The opinion rendered in this matter on December 7, 1978, inadvertently omitted judgment in favor of Fidelity and Deposit Company of Maryland, third party plaintiff, and against Al Smith's Plumbing & Heating Service, Inc., and Alvin J. Smith, individually, third party defendants, under the indemnity agreement executed in connection with the Sub-Contractor's Bond of Indemnity guaranteeing the performance of the plumbing subcontractor.
Accordingly, our judgment of December 7, 1978, is amended to add the following:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of Fidelity and Deposit Company of Maryland, third party plaintiff, and against Al Smith's Plumbing & Heating Service, Inc., and Alvin J. Smith, individually, third party defendants, for such amounts as third party plaintiff is required to pay under the judgment rendered against it, as surety, in favor of River Crest, Inc.
In all other respects the judgment of December 7, 1978 is affirmed.
NOTES
[1] Mr. Gerald Karcher, president of River Crest, Inc., testified Smith's default added 120 days to the completion time of the project.