BLANCHE, Judge.
This matter involves a controversy over a default judgment taken by plaintiff. The evidence offered by plaintiff to confirm the default judgment was not transcribed and plaintiff and defendant, through their respective counsel, have prepared a Narrative of Facts as provided by Article 2131 of the Code of Civil Procedure. Philip H. Holmes, as president of the plaintiff-corporation, was the only witness to testify, and according to the Narrative, the following evidence was presented at the confirmation of the default:
“The evidence presented by plaintiff on confirmation consisted of the original contract which was the subject of the suit, the testimony of Mr. Philip H. Holmes, President of the plaintiff corporation, and the affidavit of Mr. Holmes previously filed in the record. The testimony of Mr. Holmes was as follows:
“According to Mr. Holmes, defendant, Reo Construction, Inc., had been hired as general contractor by the Wilberts to construct a new funeral home on the site of Wilbert’s Funeral Home in Plaque-mine, Louisiana. At the request of the architect for the project, plaintiff examined the Wilbert’s property in Plaque-mine and gave an estimate setting the price at which plaintiff would demolish and remove the two existing buildings on the Wilbert’s property. Plaintiff did make an estimate which consisted of two parts, first, the charge for demolishing and removing a certain smaller building on the rear of the Wilbert property, and second, the charge for demolishing and removing the large building on the front of the Wilbert property which housed the old funeral home. Defendant was not present at this examination. The witness further stated that subsequent to the examination he sent his son, Michael Holmes, to meet with the architect, the Wilberts, and defendant, at which time Michael Holmes made it quite clear to them that any contract entered into by plaintiff would have to provide for plaintiff demolishing and removing both of the buildings.
“Mr. Holmes then explained how such an estimate is made for demolition work. *564 According to his testimony, the usual contract entails the demolition contractor acquiring [ownership] to all or a part of the salvaged materials. It is first necessary to determine the value of the salvage to be realized from a particular building before setting any additional charge for the demolition and removal. The actual charge will then be smaller, if the value of salvaged materials is large, and vice versa.
“Mr. Holmes then identified and explained the contract which he drafted pursuant to his understanding with the parties and pursuant to the estimate, whereby plaintiff agreed to demolish and remove the two buildings in question in two designated phases. Phase #1 involved demolition and removal of the smaller building at the rear of the Wilbert property at a charge of $1,500.00, the salvaged materials to become the property of the plaintiff. Phase #2 involved the demolition and removal of the large building on the front of the Wilbert property at a charge of $4,000.00, the salvaged materials to become the property of the plaintiff. The witness explained that the second phase of the contract was to be performed at a time designated by defendant, which stipulation was included in the contract., Mr. Holmes signed the contract on behalf of plaintiff and forwarded same to Mr. Ray Roussel, who signed on behalf of defendant.
“The testimony of Mr. Holmes further indicated that Phase #1 of the contract was performed by plaintiff and payment in full was received therefor. However, he then stated that defendant never called upon plaintiff to perform Phase #2 of the contract, and that someone else demolished the large building on the front of the Wilbert property.” (Narrative of Facts, Record, pp. 15-A, 15-B)
The contract was offered into evidence and under the date thereof is the following notation:
“Re: Demolition of two buildings at Wilbert’s Funeral Home; Plaquemine, La. Work to be done in two phases numbered one and two.” (Exhibit P-1, Record, p. 6)
Phase 2 of the contract referred to above provides:
“ * * * At a time designated by you, we will demolish and remove the large building on the front of the property. Our charge for this part of the demolition is $4000.00 (four thousand dollars) payable to us upon completion.” (Exhibit P-1, Record, p. 6)
Plaintiff’s suit against the defendant alleges a breach of contract as a result of plaintiff’s failure to call upon him to demolish the building called for in Phase 2 of the contract and by permitting the building to be removed by someone else. Damages were sought totaling $7,500 and consist of $4,000 as the agreed contract price and $3,500 as the value of the salvage materials to be derived from the performance of Phase No. 2 of the contract. The Court accepted the estimate of Mr. Holmes as to the value of the salvage material and gave plaintiff judgment as prayed for. From the default judgment in favor of plaintiff, the defendant took this appeal.
The defendant contends that the setting of a time for the plaintiff’s performance of Phase 2 was a suspensive condition of the contract. In support of this contention defendant cites the following articles of the Civil Code:
“Art. 2021. Conditional obligations are such as are made to depend on an uncertain event. If the obligation is not to take effect until the event happen, it is a suspensive condition; if the obligation takes effect immediately, but is liable to be defeated when the event happens, it is then a resolutory condition.”
“Art. 2043. The obligation contracted on a suspensive condition, is that which depends, either on a future and uncer *565 tain event, or on an event which has actually taken place, without its being- yet known to the parties.
“In the former case, the obligation can not be executed till after the event; in the latter, the obligation has its effect from the day on which it was contracted, but it can not be enforced until the event be known.”
The future and uncertain event in this case is alleged to be the defendant’s designation of a time for the demolition of the building described in Phase 2 of its contract with plaintiff. We reject this interpretation in favor of plaintiff’s argument that the words “at a time designated by you” constitute the term for the performance of the contract.[1]
In this case the parties had reached an agreement which was complete in all respects except for the time of performance. The “event” of demolition was certain. The only element of uncertainty was that pertaining to when the demolition would become necessary. Obviously, it was to occur when the defendant’s progress on the contract with Wilbert’s Funeral Home reached the point where the building described in Phase 2 of the contract was available for demolition and removal.
The words “at a time designated by you” cannot be construed to mean that the defendant reserved the right to refrain from ever designating a time. This is not a case of a contract that leaves the defendant the option of requesting the plaintiff’s performance. In other words, the contract does not read “at a time designated by you if you decide to set a time,” nor does it read “at a time designated by you if you decide to choose us as the demolition company for Phase 2 of the contract.” Instead, the contract called for the plaintiff’s performance of Phase 1 immediately and Phase 2 at a date to be determined in the future. Phase 1 was completed as contemplated by the parties; however, the plaintiff’s performance of Phase 2 of the contract was never sought by the defendant. Defendant should have sought plaintiff’s performance when defendant’s progress of the contract with Wilbert’s Funeral Home reached the point where the building described in Phase 2 was available for demolition and removal. This event was to occur, and did occur, in the course of defendant’s work for Wilbert’s.
Since defendant did not designate a time for plaintiff’s performance, we hold that plaintiff is entitled to damages for defendant’s breach of Phase 2 of the contract described herein.
The trial judge gave plaintiff a judgment for $7,500 representing the full contract price of $4,000 plus $3,500 for the value of the salvage materials contained in the building. We agree with defendant that the trial judge committed error in this regard, as the proper measure of damages for breach of the contract is the amount of loss plaintiff sustained and the profit of which he has been deprived.[2] It is obvious *566 that the full contract price and value of the salvage materials could not be all profit as plaintiff would have incurred some cost in labor and materials to demolish the building and claim the salvage.
Accordingly, the case must be remanded for the purpose of making a determination of the loss he sustained and the profit of which he was deprived as a consequence of defendant’s breach of the contract.
For the above and foregoing reasons, the judgment of the District Court in favor of the plaintiff is affirmed; however, that portion of the judgment granting plaintiff the sum of $7,500 is reversed and set aside, and this matter is remanded for the limited purpose of permitting plaintiff to prove his damages in accordance with the views herein expressed. The costs of this appeal are to be borne equally by plaintiff and defendant, and all other costs are to await a final determination on the merits.
Affirmed in part, reversed in part and remanded.

. Articles 2048-2051 of the Civil Code are pertinent to this interpretation:
“Art. 2048. The time given or limited for the performance of an obligation, is called its term”.
“Art. 2049. A term may not only consist of a determinate lapse of time, but also of an event, provided that event be in the course of nature, certain; if it be uncertain, it forms a condition.”
“Art. 2050. When no term is fixed by the parties for the performance of the obligation, it may be executed immediately, unless, from the nature of the act, a term, either certain or uncertain, must be implied. Thus, an obligation to pay money, without any stipulation for time, may be enforced at the will of the obligee. But a promise to make a crop of sugar is necessarily deferred, until the uncertain period when the cane shall be fit to cut.”
“Art. 2051. The term differs from the condition, inasmuch as it does not suspend the engagement, but only retards its execution.”

. Article 1934 of the Civil Code provides in part;
“Art. 1934. Where the object of the contract is any thing but the payment *566 of money, the damages due to the creditor for its breach are the amount of the loss he has sustained, and the profit of which he has been deprived. * * * ”